State ex rel. Southey *v.* Lashar.

---

The State ex rel. Alfred G. Southey *vs.* Benjamin F. Lashar.

Third Judicial District, New Haven, Jan. Term, 1899. Andrews, C. J., Torrance, Baldwin, Hamersley and Hall, Js.

If the charter of a city specifies the way in which a municipal officer is to be chosen, compliance with the mode or method thus prescribed is essential to the validity of his election or appointment.

The charter of Bridgeport provided for a board of public works to consist of six members named by the mayor, of which the latter should *ex officio* be a member and over which he should preside whenever present at its meetings, and this board was charged with the duty of electing a street commissioner. In an action of *quo warranto* to determine the respondent's title to that office, it appeared that he was elected, if at all, by the vote of four members of the board at a meeting over which the mayor, although present and ready to preside, was not permitted to do so, and that the motions were made and put and the result of the vote declared by one of the members of the board, against the protest of the mayor, whose authority as presiding officer was openly and persistently disregarded and defied. *Held* that the proceedings thus taken were of no avail and the formal election of the respondent was invalid, because the board was not organized and did not proceed as required by the charter.

Argued January 18th—decided March 9th, 1899.

Information in the nature of *quo warranto* to determine the validity of the respondent's election and appointment as street commissioner of the city of Bridgeport, brought to the **Superior** Court in Fairfield County and reserved by that court,

*Elmer, J.,* upon a finding of facts, for the consideration and advice of this court. *Judgment of ouster advised.*

The writ sets forth that the relator was on the 10th day of June, 1898, duly and regularly elected and appointed by the board of public works of the city of Bridgeport to the office of street commissioner of said city; that he accepted said appointment, and on the 18th day of July, 1898, duly qualified and entered upon the duties of said office; that the defendant on said 18th day of July, 1898, and thence continually hitherto, "without legal warrant, claim or right, has used and exercised, and still does use and exercise the several powers, duties and privileges belonging to said office of street commissioner, concerning which said powers, duties and privileges the defendant has usurped, and still does usurp, at said Bridgeport, to the great damage and prejudice of the rights of the said city of Bridgeport and of the relator."

The defendant, not denying the averments of the information, alleged that he had not at any time usurped said office; on the contrary, that he was, on the 20th day of May, 1898, duly and regularly elected and appointed by the said board of public works of the said city of Bridgeport to the office of street commissioner for the period of one year from said date, and until his successor should be duly chosen and qualified; that he accepted said election, duly qualified and entered upon the duties of said office, and that by virtue of the said election and qualification he has from said day continued, and still continues, to act as such street commissioner; and prayed that therefore the said office and its privileges be adjudged to him.

There was a hearing, the court made a finding of the facts, and reserved the case for the consideration and advice of this court.

The facts necessary to be considered in giving advice in this case—condensed from the finding—are these: The charter of the city of Bridgeport has, since its earliest organization, provided for the existence of several boards to be appointed by the mayor. One of these was a board of public works to consist of six members. At the 1895 session of the

General Assembly, the charter was wholly revised. This revised charter went into effect on the 1st day of July, 1895. It provided in its 19th section " that there shall continue to be a board of public works and of charities, each of which shall consist of six members." The members held office for three years. The appointments were so arranged that two members went out of office and two new ones were appointed, each year. Other boards were also provided for in the charter; the members of all such boards were to be appointed by the mayor. Another section (17) provided that " the mayor shall, *ex officio,* be a member of said respective boards, but shall have no vote in any of their proceedings except in case of a tie-vote. He shall preside at all meetings of said respective boards at which he may be present."

The common council of said city had, pursuant to authority given by the charter, passed an ordinance that " the board of public works shall keep or cause to be kept, an accurate and correct record of all their official proceedings," etc.; and that they shall " have power to make needful rules and regulations for the conduct of the business and affairs of said department, and for the control and regulation of the employees thereof." Acting under this ordinance the board of public works, at a meeting held in May, 1896, adopted a body of rules, one of which was that the board " shall, during the month of May in each year," elect a president, a clerk, a street commissioner, and other officers, and each of said officers " shall hold office for the term of one year from the date of such election and until his successor is elected."

On the 21st day of September, 1897, the board repealed the rules of May, 1896, and adopted a new body of rules, namely : —

" Sec. 1. The board of public works shall, during the month of June in each year, elect the following officers, to wit: a president, a clerk, a street commissioner, a superintendent of bridges, and each of said officers shall hold office for the term of one year from the date of his election and until his successor shall be elected. Sec. 2. The clerk of said board shall keep an accurate and correct record of all the official proceed-

ings, orders, contracts, etc., of said board," etc. Sections 6 and 7 prescribed the duties of the president of said board, *viz.*, that he should preside at all meetings when the mayor was not present. It was his duty, under the rules of the board, to make all appointments of committees of members of said board, to which standing committees was referred the business coming before said board for appropriate action. He was also empowered under the rules to call meetings of the board whenever he deemed it necessary. " Sec. 9. No motion to repeal or amend the foregoing rules shall be entertained by the president or presiding officer of the board of public works, unless notice of such repeal or amendment has been given at the last preceding meeting, unless by unanimous consent of all members present."

For the year following the 1st of June, 1897, the members of said board were Mr. Downer, Mr. Pierce, Mr. Somers, Mr. Ferguson, Mr. Waterhouse and Mr. Thorme. On the 4th day of June, 1897, Mr. Somers was elected by said board to be its president. He has ever since continued to hold said office.

At a meeting of said board duly called and held on the 10th day of May, 1898, all the members being present, Mr. Waterhouse gave notice that " at the next meeting of this board, he would move to repeal or amend the rules of this board in accordance with such rules." At the next meeting of the board duly called and held on the 20th day of May, 1898, all the members being present and the mayor being present and presiding, action was taken as follows : —

" Mr. Waterhouse presented the following : According to my notice to this board at the last meeting, I hereby offer the following resolution : ' *Resolved*, that the last rules adopted by this board be and the same are hereby repealed.' Mayor Taylor ruled that the resolution was not in order, that such action was illegal, and declined to put the motion. Mr. Downer raised the point of order that the notice given by Mr. Waterhouse at the last meeting was not a legal notice under the rules, as it was not definite. The mayor sustained this point of order, and declined to put the motion. Mr

Pierce then declared that as the mayor declined to put the motion he would do so himself, and he called for a rising vote on the adoption of the motion, which resulted as follows : in the affirmative, Messrs. Pierce, Ferguson, Thorme and Waterhouse. Mr. Pierce then declared the motion carried. Mr. Downer objected to this action, claiming that it was illegal. Mayor Taylor instructed the clerk not to make any record of this action, as it was illegal. Mr. Ferguson moved that the clerk be directed to record the proceedings. Mr. Pierce called for a rising vote on the motion, which resulted as follows : in the affirmative, Messrs. Pierce, Ferguson, Thorme and Waterhouse. Mr. Pierce declared the motion carried. The board then, on the motion of Mr. Thorme, proceeded to an informal ballot for street commissioner, by a rising vote called for by Mr. Pierce, which resulted as follows : affirmative, Messrs. Pierce, Ferguson, Thorme and Waterhouse. The clerk was, by the same vote, directed to count the ballots. Result of ballot, Benjamin F. Lashar, 5. The board then voted by a rising vote, the motion being put by Mr. Pierce, to proceed to a vote by a formal ballot for street commissioner, and it resulted as follows : affirmative, Messrs. Pierce, Ferguson, Thorme and Waterhouse. Result of ballot, Benjamin F. Lashar, 3; James Hughes, 1. Mr. Pierce declared that there was no choice, and another ballot was taken which resulted as follows : Benjamin F. Lashar, 4. Mr. Pierce declared Mr. Lashar elected street commissioner. . : . Mr. Taylor (the mayor) desired the clerk to enter on the record his formal protest against all the proceedings in which Mr. Pierce acted as chairman, claiming that all such proceedings were illegal. Mr. Downer also protested on the same ground."

It is found that at said meeting Mr. Somers, the president of the said board, was not requested by Mr. Pierce or either member of the board to put said motions ; and that said Pierce was not requested by Mr. Somers to put said motions to vote, or to declare said vote, or to act in the premises at all.

*Stiles Judson, Jr.,* for the relator.

*Robert E. DeForest* and *John J. Phelan,* for the respondent.

ANDREWS, C. J. The information charges that the defendant has usurped and that he still does usurp the office of street commissioner of and for the city of Bridgeport. The defendant admits that he holds and occupies the said office, but he denies that he has at any time usurped the same. On the contrary, he insists that he was duly and legally elected to that office, and that therefore he may rightfully have, use and enjoy the powers, privileges and duties pertaining to the same. In substance, the question upon which the advice of this court is asked, is this: Was the defendant lawfully elected to the office of street commissioner of the city of Bridgeport at the time and by the proceedings which are set forth in the finding? In answering this question some subsidiary questions must be considered.

"An important feature of the law governing *quo warranto* informations, and one which most distinguishes this remedy from ordinary civil actions at law, is that the prosecutor is not obliged to show title in himself to sustain the action, or to put the respondent upon the necessity of proving his title. And the principle is well established that the burden rests upon the respondent of showing a good title to the office whose functions he claims to exercise, the State being only obliged to answer the particular claim of title asserted. . . In proceedings in the nature of a *quo warranto*, the object being to test the actual right to the office and not merely a use under color of right, it is incumbent upon the respondent to show a good legal title, and not merely a colorable one, since he must rely wholly on the strength of his own title. If he fails in this requirement judgment of ouster will be given." High on Extra. Remedies, § 629; *State ex rel. Reiley* v. *Chatfield,* 71 Conn. 104; *People ex rel. Judson* v. *Thatcher,* 55 N. Y. 525; *People* v. *Pease,* 30 Barb. 588, 591.

The city of Bridgeport is a municipal corporation created by its charter. Its charter is its enabling act and indicates the full measure of its powers. *Farrell* v. *Winchester Ave. R. Co.,* 61 Conn. 127. It can exert its powers only in the

manner authorized by its charter. *Head* v. *Providence Ins. Co.*, 2 Cranch, 127. The city can do no act nor elect any officer unless it is authorized to do so by its charter. If the charter points out a particular way in which any act is to be done or in which an officer is to be elected, then, unless these forms are pursued in the doing of the act or in the electing of the officer, the act or the election is not lawful. In all such cases the form of the appointment is essential to its validity. *Forma dat esse rei.* *Farrell* v. *Bridgeport*, 45 Conn. 191; *Johnston* v. *Allis*, 71 id. 207, 217; *New Haven* v. *Whitney*, 36 id. 373; *District of Columbia* v. *Bailey*, 171 U. S. 161, 178.

The charter of the city of Bridgeport provides for certain administrative boards. One of these is the board of public works, to consist of six members named by the mayor; and the charter prescribes that the mayor shall, *ex officio*, be a member of said board, but shall have no vote except in case of a tie; and that "he shall preside at all its meetings at which he is present."

These provisions of the charter make the mayor an essential constituent of the board, and assign to him, by express command, the duty to preside at all its meetings at which he is present. If, being present at any meeting he does not preside, then the board is not organized in the manner pointed out by the charter; and although all the members should be present, if the mayor, being present, does not preside, it would be but an irregular assemblage of persons unknown to the charter, and whose act, however formally gone through with or however carefully written out, would have no validity to bind the city or to give title to any appointee. That this is the law is made clear by the authorities we have cited.

The ordinances and rules made pursuant to the authority given in the charter, provide for the office of a street commissioner to be elected by the board of public works. The proceedings of that board by which the defendant claims to have been elected to the office he holds, are set forth at some length in the finding. They show a meeting of the members of the board at which the mayor was present and willing to preside, indeed, at which he sought to preside, but that cer-

tain members of the board acted irregularly, in open and persistent disobedience to the authority and rights of the mayor as the presiding officer of the meeting, and, against his protest, pretended to pass and to announce the result of certain votes. It was one of the votes of these members while so acting irregularly that was given to the defendant and by which alone he can claim to be elected. As to these votes, the proceedings recited show that the mayor did not act as presiding officer at all. He did not put the question; he did not declare the result. As to these votes, the persons who took part in them were not acting according to the forms nor within the powers conferred by the charter on the board of public works. In the case of *Farrell* v. *Bridgeport*, 45 Conn. 191, this court decided that in the appointment of a policeman where the forms and steps prescribed by the charter had not been observed, there was no valid appointment. The office of street commissioner is not of less importance than that of policeman. In either case it is a question of charter power. What the charter commands must be obeyed, or the appointment is void. In the claimed election of the defendant the provisions of the charter were not obeyed. It seems to this court that the defendant was not appointed to the office of street commissioner of the city of Bridgeport according to the provisions of the charter of that city.

Counsel for the defendant in their argument in this court, pass over the charter powers of the board of public works entirely. They treat the case as one depending alone on parliamentary law, or parliamentary usage. They say that because the mayor, as the presiding officer of the board, declined to entertain the motion made by Mr. Waterhouse, any member might put the motion and declare the result; and that the action so taken is lawful and binding on the board to the same extent as if the motion had been put by the presiding officer. They make a somewhat high-sounding talk to the effect that the presiding officer of any deliberative board or assembly is the servant of the body over which he presides and not its master, and that if a presiding officer attempts to dominate the assembly or to thwart its will, then any member may act

in the place of the president. As an abstract proposition, perhaps no one would care to question it. So far as the facts in this case appear there is no occasion to admit it or deny it. If such right exists it is analogous to the right of revolution,— a right to be exercised only when all peaceful and regular methods have been tried and exhausted. Every presumption must be in favor of regular action and against irregularity. Action which violates the regular rules of law can never be said, strictly, to be lawful. Such action is acquiesced in when a case of overmastering necessity is shown, or when fundamental rights are endangered.

Nothing of that kind appears in the present case. Nothing is shown to indicate that the mayor, as presiding officer, intended or desired to do anything contrary to the will of the board. In declining to entertain the motion made by Mr. Waterhouse, and in sustaining the point of order made by Mr. Downer, he was acting very clearly within the lines of his duty and powers as the presiding officer. His good faith is to be presumed. In every assembly, small or large, which is governed by parliamentary law, there will be questions of order. These must be, in the first instance, decided by the presiding officer. In every such assembly when a motion is made it is the duty of the presiding officer to decide whether or not it is in order. If he deems it to be in order he entertains it and proceeds to lay it before the assembly in a proper way. If he deems it to be not in order he declines to entertain it. This is just what the mayor did. He decided the question of order raised by Mr. Downer. Such a decision must be made by the presiding officer subject to the right of appeal therefrom by any member.

"When a question of order is raised, as it may be by any one member, it is not stated from the chair and decided by the assembly like other questions, but is decided, in the first instance, by the presiding officer without any previous debate or discussion by the assembly. If the decision of the presiding officer is not satisfactory, any one member may object to it and have the question decided by the assembly. This is called appealing from the decision of the chair. The ques-

tion is then stated by the presiding officer on the appeal, namely, shall the decision of the chair stand as the decision of the assembly? And it is thereupon debated and decided by the assembly in the same manner as any other question, except that the presiding officer is allowed to take part in the debate, which on ordinary occasions he is prohibited from doing." Cushing's Manual, § 154. In Mr. Cushing's larger work this same parliamentary law is stated in this way: "If the opinion (of the presiding officer) is acquiesced in, it stands as the judgment of the assembly, and is to be enforced or executed accordingly; but any member, who obtains the floor for that purpose, may appeal from it, and if the appeal is seconded, as it must generally be, and allowed, it then entirely abrogates the decision of the presiding officer, and refers the point of order to the decision of the assembly itself, whose decision thereof furnishes the rule to be pursued afterwards." Cushing's Law and Practice of Legislative Assemblies, § 1464. The whole topic is treated in that work. Part VI, Chap. 6, Art. 2, sub-title, Questions of Order, §§ 1457 to 1471.

At the meeting of the board of public works of the city of Bridgeport held on the 20th day of May, 1898, the mayor was present and willing to preside. If he did not preside, then the board was not organized as the charter commands. When at that meeting the mayor, as the presiding officer, ruled that the motion made by Mr. Waterhouse was not in order, and sustained the point of order raised by Mr. Downer, it was the privilege of Mr. Pierce, if he objected to that ruling, to appeal from it to the assembly. If, as is now contended, a majority of the board was of the same mind as Mr. Pierce, then, on an appeal the decision of the presiding officer would have been reversed. Had that been done it would have become the duty of the presiding officer to put the motion made by Mr. Waterhouse. To appeal would have been regular and lawful. Not to appeal, but to take another course, was irregular and in violation of parliamentary law.

It is the duty of the presiding officer of any assembly "to **put to vote all questions which are regularly moved, or nec-**

essarily arise in the course of the proceedings, and to announce the result." Cushing's Manual, § 27. It is this duty which the charter of the city of Bridgeport commands its mayor to perform at every meeting of the board of public works at which he is present. If he does not do this he does not preside in the manner which the charter prescribes.

It is the opinion of this court that all the votes alleged to have been taken at the said meeting of the said board which were not put by the mayor, and the result of which he did not announce, are wholly void. They are void because they violate parliamentary law, and because they violate the commands of the charter of the city.

And as the defendant offers no evidence of his election to the office of street commissioner other than one of the votes so taken, we think he does not show a good title to that office. He is not entitled to exercise its powers or to receive its salary. *Farrell* v. *Bridgeport*, 45 Conn. 191.

The Superior Court is advised to render judgment of ouster against the defendant.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.

HAMERSLEY, J. (dissenting). The charter authorized the board of public works to appoint a street commissioner. This appointment could be made at any time after the expiration of one year from the commencement of the term of the last appointee. The rules limiting an appointment to the month of June could not prevent a valid appointment in May. The charter puts no restriction on the mode of appointment, except that it shall be made at a meeting of the board where four members, exclusive of the mayor, are present, and shall receive the active concurrent vote of four members.

It appears by the record that the respondent was appointed street commissioner at a meeting when all the members were present, the mayor presiding, by the active concurrent vote of four members. This record is not attacked, and is conclusive. It is immaterial, as affecting the validity of this appoint-

ment, what improprieties were committed by the presiding officer or other members prior to the action taken. The departure from or suspension of written or unwritten parliamentary rules, by the majority of an executive board, cannot affect its action, otherwise valid, duly ascertained and recorded.

I totally dissent from the construction of the charter which gives the mayor power to prevent any action by the board of public works, by attending its meetings and then refusing to put to vote all motions that may be made. Such power cannot be found in the charter.