EDWARD J. KEEGAN vs. THE TOWN OF THOMPSON
ET ALS.

First Judicial District, Hartford, October Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and JENNINGS, Js.

Since the position of a statutory officer depends entirely upon the legislation creating his office and not upon any contractual relation, it follows that he is only entitled to such compensation, if any, as is affixed by law to the office itself.

Municipal corporations can exercise no powers except such as are expressly granted to them, or such as are necessary to enable them to discharge their duties and carry into effect the objects and purposes of their creation.

While it is impossible to state comprehensively the extent to which the compulsory Town Management Act (Chapter 52 of the General Statutes) repealed by implication the earlier statutes relating to school districts, it is clear that members of town school committees are now town officers, even though, in the exercise of the discretionary powers expressly conferred upon them, they act as agents of the law and are not subject to control by the town.

The provision of § 411 of the General Statutes, that "any town may make ordinances concerning matters not regulated by the General Statutes," does not expressly or by necessary implication confer the power to compensate town officers.

A town may reimburse the members of its school committee for their necessary expenses, and it may pay them the fees fixed by statute for such services as they may render in the capacity of school visitors, but there is no authority, express or implied, under which a town may legally vote compensation to them for the performance of their official duties as committeemen.

In an action by a town, or by a taxpayer on behalf of a town, against one of its officers to recover back payments illegally made to him by way of compensation, it is a good defense, if properly pleaded, that such payments were made in accordance with a long usage.

The question whether a particular town officer might have been legally paid for his services under § 388 of the General Statutes, authorizing every town to pass ordinances "changing the compensation of any of its officers," cannot be determined where it appears that the town vote, under which he actually was paid,

was not passed in accordance with the procedure prescribed in § 389.

Argued October 6th—decided October 17th, 1925.

ACTION by a citizen and taxpayer of the town of Thompson, for and on behalf of the town and its inhabitants, to recover sums alleged to have been paid illegally to the defendant Corttis as compensation for his services as a member of the school committee, and for an injunction to restrain further payments, brought to the Superior Court in Windham County and tried to the court, *Maltbie, J.;* judgment for defendants, and appeal by the plaintiff. *Error, judgment set aside, and cause remanded.*

*Ralph O. Wells,* for the appellant (plaintiff).

*Charles L. Torrey,* for the appellee (defendant Edgar H. Corttis).

BEACH, J. This is a taxpayer's suit to restrain the treasurer and selectmen of Thompson from paying, or approving for payment, any bills of the defendant Corttis for services in performing his official duties as a member or chairman of the town school committee, and against the defendant Corttis for damages in favor of the town, on account of moneys claimed to have been already paid to him for such services. The complaint is based on the allegation that Corttis was bound to perform his duties as a member of the school committee without compensation and that the town had no right to use town funds to compensate him for such services, and also on the allegation that the bills in question were not approved by the school committee as required by law. It is further alleged that the officials defendant intend to continue to pay Corttis as before unless restrained.

The officials defendant admit that they have approved and paid the bills in question in accordance with a vote passed at a duly warned special meeting of the town held April 28th, 1915, as follows: "Voted to pay Town School Committee as heretofore." They' disclaim any intent other than to abide by the judgment of the court as to their duty in the premises. The defendant Corttis denies that he was or is bound to perform his duties as a school committeeman without compensation and admits that he intends to demand payment for such services in the future, unless it be· adjudged that he has no right to do so. The Superior Court gave judgment for the defendants, holding that the town had a right to compensate the members of its school committee for the performance of their official duties, and that· the town, in whose behalf the plaintiff sues, was in no position to demand repayment of past compensation on the ground that the bills in question had been approved by the selectmen instead of by the school committee, as the fact is found.

The first and most important question raised by this appeal is whether towns, conducting their governmental business under the General Statutes, have a right to compensate the members of their school committees for performing their official duties.

There is no doubt that members of a town school committee are public officers. *Ogden* v. *Raymond,* 22 Conn. 379; *Hassett* v. *Carroll,* 85 Conn. 23, 81 Atl. 1013. In this connection it is interesting to note that the revised form of the original Act of 1798 (Compilation of 1808, p. 581) creating school societies and defining their powers and duties, which appears as Chapter 50 of the Revision of 1918, provides that "if any officer duly appointed, at any time by such society shall refuse to execute the trust committed to him, he

shall suffer the penalty which town officers are liable to, for refusing to serve in the offices to which they are chosen." That this conception of the high public duty imposed by appointment to the office of school committeeman has not been lost, is shown by the present statute, § 941 of the General Statutes, providing for the election of district school committees by ballot and enacting that "any resident of the district so chosen who shall refuse or neglect to perform the duties of the office, shall pay five dollars to said district." It is well settled that public officers occupying positions created by statute hold their offices by appointment and not by contract, and are obligated to perform the duties of their respective offices without other compensation than such, if any, as is attached by law to the office itself. *Matter of Russell's Application,* 51 Conn. 577; *Sibley* v. *State,* 89 Conn. 682, 96 Atl. 161; *Garvie* v. *Hartford,* 54 Conn. 440, 7 Atl. 723; *Beckwith* v. *Farmington,* 77 Conn. 318, 59 Atl. 43.

The defendant Corttis, therefore, was not in any event entitled to compensation for the performance of his official duties on the basis of the reasonable value of the time spent in performing them, for that presupposes an employment under contract; and he was not entitled to any compensation at all unless by virtue of some Act of the General Assembly or some vote or by-law of the town acting within its powers.

It is also well settled that "towns, like other corporations, can exercise no powers except such as are expressly granted to them, or such as are necessary to enable them to discharge their duties and carry into effect the objects and purposes of their creation." *Abendroth* v. *Greenwich,* 29 Conn. 356, 363; *Booth* v. *Woodbury,* 32 Conn. 118; *Willard* v. *Killingworth,* 8 Conn. 247, 254.

By the compulsory Town Management Act of 1909, now Chapter 52 of the General Statutes, the control of all the public schools within each town was transferred from the school district or districts to the town itself, which, for that purpose, was constituted a school district; the clerk and the treasurer of the town were given all the powers and duties, respectively, of the clerk and treasurer of the town school district; the annual town meeting was made the school district meeting, and a town school committee was required to be elected at the annual town meeting, having the same powers and duties with respect to all the public schools in the town as the former district school committees had with respect to the public schools within their respective districts. At the same time the older statutes, respecting the separate corporate entity of school districts and their corporate powers and duties, have not been expressly repealed, and it might not be easy to determine in any comprehensive way the extent to which they have been repealed by implication. It seems clear, however, that members of the town school committee have been made, by express mandate of the General Assembly, officers of the town. Thus, § 267 of the General Statutes, carrying the subtitle, "ballot for and appointment of town officers," specifies those, including "town school committees," who shall be elected by ballot, and then provides that "all other town officers" shall be appointed by the board of selectmen.

It is true that a town meeting cannot control the discretionary powers conferred by § 920 of the General Statutes upon school districts, and now exercised, in the absence of a specially appointed agent, by the town school committee. *State ex rel. Huntington* v. *Huntington School Committee,* 82 Conn. 563, 566, 74 Atl. 882. But the fact that in exercising the discretion-

Keegan *v*. Thompson.

ary powers expressly conferred on them by the General Assembly, the members of the school committee act as agents of the law and not of the town, does not prevent them from being officers of the town, for the same thing is true of selectmen. In *State ex rel. Mc-Dermott* v. *Wilkinson,* 88 Conn. 300, 308, 90 Atl. 929, we held that the selectmen of the town of Orange, having been empowered by the General Assembly to organize a fire department, could not be controlled in their discretionary selection of employees by vote of the town meeting, because they were acting as agents of the law and not of the town. See also *Lucier* v. *Norfolk,* 99 Conn. 686, 695, 122 Atl. 711.

Coming to the precise question whether the town of Thompson is expressly empowered by statute to compensate its town school committeemen for the performance of their official duties, we are of opinion that § 411 of the General Statutes, printed in the footnote, does not expressly, or by necessary implication, confer such a power. It cannot be so construed except on the theory that it was intended by the General Assembly as a general grant of legislative power, subject to the limitations expressed; and that such was not the intent of the General Assembly is manifested by the fact that while § 411 is an ancient Act, the statute book is full of subsequent grants to the towns of specific powers to pass by-laws and ordinances respecting particular subjects covering a multitude of details; most of which subsequent grants would have been wholly unnecessary if the towns already possessed any general legislative powers. See Chapter 29 of the

SEC. 411. TOWNS MAY MAKE ORDINANCES AND FIX PENALTY. Any town may make ordinances concerning matters not regulated by the General Statutes, which ordinances may provide for the imposition of a fine not exceeding twenty-five dollars for any violation thereof.

General Statutes, entitled "General Regulations," also Chapters 24, 25, 26, 27 and 28. There are also statutes fixing or authorizing the payment of compensation to named town officers, including town clerks, § 2249; assessors, § 2258; selectmen acting as fence viewers, § 2260; and first selectman acting as building inspector, § 2625.

Coming still closer to the point, § 883 authorizes towns to pay compensation to the treasurer and secretary of the town school committee, and § 892 authorizes the payment of compensation to members of school committees acting as school visitors; but there is no statute authorizing towns to compensate school committeemen for the performance of the duties imposed on them as members of the school committee.

On April 28th, 1915, when the vote was passed, under which the payments in question were made, there was no statute which might be supposed to authorize towns, in general terms, to fix the compensation of town officers. Chapter 319 of the Public Acts of 1915, effective August 1st, entitled "An Act providing for Home Rule in Towns, Cities, and Boroughs," authorized any town to adopt certain measures specified therein, including a measure "changing the compensation of any officer of the town, . . . whether the same be fixed by charter or otherwise." The authority thus granted was evidently limited to changing the compensation of any officer who was already entitled to stated compensation by charter, statute or otherwise. In 1917 this Act was superseded by an Act which was identical, for all the purposes of this appeal, with Chapter 25 of the General Statutes. The first section of the Act of 1917, now § 388 of the General Statutes, authorizes any town to enact certain by-laws, including a by-law "changing the compensation of any of its officers"; but the second section of

that Act, now § 389 of the General Statutes, surrounds the passage of the permitted by-laws with precautions evidently intended to prevent hasty action. It provides that the selectmen shall give a public hearing upon any proposed by-law, that such by-law shall become effective sixty days after approval by the selectmen, and for a referendum upon the petition of fifteen per cent. of the registered voters. As no attempt has been made to follow the prescribed procedure, it is evident that § 388 has no application to the case at bar, and we express no opinion as to the scope of the authority thereby conferred.

No doubt the necessary expenses of any member of the town school committee, incurred while acting with the authority of the committee in the performance of the duties imposed on it by law, are to be paid by the town treasurer when approved by the school committee. Under § 892, and the vote of the town meeting of 1901, members of the town school committee, acting by authority of the committee as school visitors, are entitled to compensation at the rate of $3 a day. We are, however, unable to find any statutory authority for the vote of April 28th, 1915, or for the payment of compensation by the town to the members of the town school committee for the performance of their official duties as such committeemen; unless such authority may be found in §§ 388 and 389 of the General Statutes, and on that point we express no opinion for the reason given.

It is true, as we said in *Pinney* v. *Brown*, 60 Conn. 164, 169, 22 Atl. 430, that long usage has given to the selectmen of towns certain powers not expressly conferred by statute; but the finding does not show whether or not there has been long usage of paying school committeemen for the performance of their official duties, and the defendant selectmen have not

alleged in their answer that the payments in question were made in accordance with long usage, but have relied solely on the vote of the town meeting of April 28th, 1915.

For the reasons indicated, we hold that the vote of the town meeting of April 28th, 1915, was unauthorized and invalid, and the payments made to the defendant Corttis under its supposed authority were, unless justified by long usage, illegal in the sense that they were made and accepted under a mistake of law. If long usage should be pleaded and proved, the defendant would not now be liable for past illegal payments of this character.

The cause must be remanded for a hearing as to the liability for, and amount of, damages, and for such action on the prayers for injunction as the Superior Court may determine in accordance with this opinion.

There is error, the judgment is set aside and the cause remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.