PROSPER D. LACAVA *v.* JOHN J. CARFI ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued November 5—decided December 22, 1953

*Harold Koplowitz,* for the plaintiff.

518

*Roman J. Lexton,* with whom was *George J. Coyle,* for the defendants.

WYNNE, J. This case, seeking a declaratory judgment, comes before us as a reservation from the Superior Court. The following is a summary of the stipulated facts: At a meeting on July 15, 1953, the common council of the city of New Britain passed a resolution authorizing the mayor to appoint a committee of seven of its members to make recommendations for an increase, not in excess of twenty, in the number of wards or voting districts. The committee was authorized to spend $950 for technical and other assistance in connection with its services and its report. The resolution was approved by the mayor. The committee thereafter appointed by him threatens to recommend an increase in the number of wards of the city, carrying with it an increase in the number of aldermen, and the council threatens to accept the recommendation. The plaintiff is a resident taxpayer and elector of the city. By an amendment to the stipulation for reservation, the sole question upon which our advice is sought is the following: "May the Common Council, as the legislative body of the City of New Britain, under Sec. 1052 of the [General Statutes], increase the number of wards over the number established by Sec. 1 of Senate Bill No. 621, of the Special Laws of Connecticut, Session of 1941 [23 Special Laws 987]?"

Under the New Britain charter as amended by the General Assembly in 1941, ten wards were established and the boundaries thereof were fixed. 23 Spec. Laws 987. It was provided that one alderman should be elected to the common council from each ward. Id., 989. It is undisputed that the established wards have become unequal by reason of shifts in

voting population. In the charter it appears that "said wards shall be voting districts at all electors' meetings." Id., 987.

It is argued by the defendants, who are members of the committee and the comptroller of the city, that the common council has power, by virtue of the provisions of § 1052 of the General Statutes, to increase the number of voting districts in the city and that because the charter refers to wards as voting districts it is possible to create more wards and thus increase the number of aldermen. Section 1052, now § 496c of the Cumulative Supplement of 1953, reads in part: "The legislative body of any town, consolidated town and city or consolidated town and borough may divide and, from time to time, redivide such municipality into voting districts and may determine the location of polling places therein." A voting district, as the term is used in this section, is defined as "any municipality, or any political subdivision thereof, having not more than one polling place in a regular election." Cum. Sup. 1953, § 391c.

It is true that the New Britain charter provides that "said wards shall be voting districts." It does not follow, however, that the two terms are synonymous. The intent is that there shall be not more than one polling place in each ward, but so far as each ward is entitled to elect one representative to the common council it is something above and beyond a voting district. For this reason a "ward" as the word is used in the charter is not a "voting district" as those words are used in § 1052. The section does not authorize the common council of New Britain to change the number or the boundaries of the wards as fixed by the charter.

Cities and towns are creatures of the state. Election laws are the province of the General Assembly.

The city can do no act nor elect any officer unless it is authorized to do so by its charter. *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 546, 42 A. 636. The city has no inherent power to modify a legislative act. *Kelly* v. *Bridgeport,* 111 Conn. 667, 673, 151 A. 268; *Connelly* v. *Bridgeport,* 104 Conn. 238, 252, 132 A. 690; *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131, 149, 35 A. 24.

The argument that the trend toward home rule for municipalities has vested prerogatives in the city involves a strained application of the principles of legislative interpretation relied upon. Home rule, so far as it relates to charter changes, may be exercised only in accordance with the provisions of §§ 214c and 215c of the 1953 Cumulative Supplement to the General Statutes.

To the question propounded our answer is "No."

No costs in this court shall be taxed in favor of any party.

In this opinion the other judges concurred.