OLD COLONY GARDENS, INC., ET AL. *v.* CITY OF STAMFORD ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, JS.

Argued November 4—decided December 8, 1959

*Robert B. Wise,* for the plaintiffs.

*Arthur L. DiSesa,* with whom, on the brief, was *Raymond G. Cushing,* for the defendants.

BALDWIN, C. J. The plaintiffs brought this action to test the validity of an ordinance of the defendant city entitled "Regulation of Rent and Housing Accommodations," and to enjoin the enforcement of the ordinance. The parties have reserved the case on stipulated facts for the advice of this court.

The facts essential to our disposition of the matter can be stated in summary as follows: In March, 1956, the legislative authority of the city enacted a rent control ordinance. It was to expire on March 31, 1957. Prior to its expiration date, and again in 1958 and 1959, the ordinance was re-enacted for one year,

so that its terminal date is presently March 31, 1960. After a finding and declaration of necessity, the ordinance provides for the appointment of a fair rent board and empowers it to control rents for all buildings, or parts thereof, which are leased for housing purposes, were in existence prior to July 7, 1947, and were occupied on that date. Stamford Ordinances, No. 71 Supplemental (Mar. 21, 1958). The ordinance forbids the recovery of possession of such premises by the owner, by actions to evict or recover possession, except for a limited number of reasons. Enforcement of the ordinance by penalties and injunction is provided for. The plaintiffs are taxpayers and owners of real property subject to the ordinance. The first of several questions reserved for our advice is the following: "Was the enactment of [the ordinance] within the powers of the City of Stamford?" As we view the reservation, the answer to this question is determinative of the case.

A municipal corporation like the defendant city has only the powers which are expressly conferred upon it by the general statutes or by some special act of the General Assembly and those which are fairly to be implied as necessary to carry into effect the powers expressly given. *Gregory* v. *Bridgeport,* 41 Conn. 76, 86; *Waterbury* v. *Macken,* 100 Conn. 407, 411, 124 A. 5; *Keegan* v. *Thompson,* 103 Conn. 418, 421, 130 A. 707; *Bridgeman* v. *Derby,* 104 Conn. 1, 7, 132 A. 25; *Connelly* v. *Bridgeport,* 104 Conn. 238, 252, 132 A. 690; *Lacava* v. *Carfi,* 140 Conn. 517, 520, 101 A.2d 795; Rhyne, Municipal Law § 4-7. When the ordinance in question was adopted in 1956, and at the times it was subsequently re-enacted, the legislative powers of the city were contained in § 248d of the 1955 Cumulative Supplement or its successors, No. 354 of the 1957 Public Acts and § 7-148

of the 1958 Revision, and in the charter of the city. 25 Spec. Laws 408, as amended. There is nothing in the general statutes expressly conferring authority to enact rent control legislation. Although No. 465 of the Public Acts of 1957 (Rev. 1958, c. 99) conferred upon municipalities the power to amend their charters, the General Assembly was careful to enumerate in great detail the powers the municipalities would have in so doing, and the power to adopt rent control was not included. Public Acts 1957, No. 465, § 8; Rev. 1958, § 7-194. Nor does the charter of the defendant city include any express power to adopt such legislation.

The defendants point to several general provisions of the charter and contend that the necessary authority is fairly implied. These provisions confer in general terms the power to protect the public health, safety and welfare. 25 Spec. Laws 419 § 204, 409 § 40 (42), (43), (61). They also confer the powers incidental and necessary for the exercise of the powers expressly given. Id., 413, §§ 40 (62), 41. Rent controls are an exercise of the police power. *Block* v. *Hirsch,* 256 U.S. 135, 156, 41 S. Ct. 458, 65 L. Ed. 865; *Burton* v. *Hartford,* 144 Conn. 80, 87, 127 A.2d 251. It does not necessarily follow, however, that a delegation of police power in general terms by the state to a municipality includes authority to impose rent controls. The legislature did not intend that it should. In 1947 the General Assembly adopted rent control legislation applicable to every municipality in the state. Sup. 1947, §§ 1322i–1338i (Rev. 1949, §§ 7136–7152). This legislation was made operative upon the expiration of federal rent controls. § 1338i (Rev. 1949, § 7152). It authorized municipalities to appoint local rent control boards; § 1326i (Rev. 1949, § 7140); and em-

powered these boards to adjust rents; § 1327i
(Rev. 1949, § 7141); and to make findings on the
basis of which rent controls should end. § 1328i
(Rev. 1949, § 7142). This legislation, in effect, gave
authority to municipalities to exercise rent control
powers through a locally appointed board and to
terminate controls when the board found that they
were no longer necessary. Subsequent to 1949, the
General Assembly adopted a series of amendments
and, by final amendatory legislation in 1955 (Cum.
Sup. 1955, §§ 2957d–2966d), terminated all controls
as of March 31, 1956. § 2965d. Thus, in 1947, the
legislature conferred broad powers of rent control
on boards appointed by local municipal authorities,
and in terminating those powers as of March 31,
1956, the legislature declared, in effect, that as a
matter of public policy controls were no longer
necessary in the interest of the public health, safety
and welfare. It is for the state in the first instance
to determine public policy. *Buxton* v. *Ullman,* 147
Conn. 48, 55, 156 A.2d 508; *Tileston* v. *Ullman,* 129
Conn. 84, 93, 26 A.2d 582. Municipalities cannot en-
act ordinances contrary to the public policy of the
state as declared in state legislation. *Shelton* v.
*City of Shelton,* 111 Conn. 433, 438, 150 A. 811; 5
McQuillin, Municipal Corporations (3d Ed.) § 15.21.
We conclude that the charter of the defendant city
did not empower it to adopt a rent control ordinance.

In *Burton* v. *Hartford,* supra, we assumed, with-
out deciding, that a general grant of police power
by the state to one of its municipalities included au-
thority to enact rent controls. We made this as-
sumption in the process of deciding that the rent
control ordinance then before us was invalid upon
grounds other than those presently discussed, and
for no other purpose.

Our answer to the first question propounded in the reservation is "No." The other questions require no answer.

Costs in this court will be taxed to the plaintiffs as though they were the prevailing parties upon an appeal.

In this opinion the other judges concurred.