HASTINGS W. BAKER ET AL. *v*. CITY OF NORWALK ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, JS.

Argued December 1, 1964—decided January 7, 1965

*Edward J. Zamm,* deputy corporation counsel, for the appellants (defendants).

*Paul C. Jamieson,* for the appellees (plaintiffs).

KING, C. J. The plaintiffs are electors, taxpayers, and inhabitants of the defendant city of Norwalk. They seek an injunction permanently restraining the city, its employees and agents from (1) constructing, or planning the construction of, a city hall within the confines of a tract of land in that city, commonly known as the Mathews estate, and claimed by the plaintiffs to be a public park, and (2) committing any public funds for such purposes. They also seek an injunction permanently restraining the defendant John H. Gaydosh, an architect, from making plans, on behalf of the city, for the city hall. From a judgment granting the relief sought by the plaintiffs, the defendants have appealed.

The Mathews estate originally comprised about thirty acres of land,[1] with a large mansion and other buildings thereon, together with many trees, extensive lawns and other common attributes of a large residential estate. It existed as a distinct entity in the center of Norwalk for about one hundred years. In the early 1930's, the city became interested in acquiring this property for civic and municipal purposes. In 1939, the city leased the property for a term of ten years, with an option to purchase for $160,000 at any time during the first four years of the term. To enable the city to exercise this option, the General Assembly, at the behest of the city, enacted, in 1941, a special act entitled "An Act Authorizing the City of Norwalk to Issue Bonds for the Purchase and Improvement of the Matthews [sic] Estate". 23 Spec. Acts 722, No. 36 (hereinafter referred to as Special Act No. 36).[2] Thereafter, on June 30, 1941, the city acquired title in fee simple to the Mathews estate, purchasing it with the proceeds of the bonds issued pursuant to Special Act No. 36. The deeds contained no restrictions as to the use of the property.

The city of Norwalk exists under and by virtue of a charter enacted by the General Assembly. 16 Spec. Acts 1038, No. 352, as amended. As a creature of the state, the city can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. *State ex rel. Coe* v. *Fyler,* 48 Conn. 145,

[1] After the city had purchased the property, about eight acres were taken by the state for the construction of the Connecticut Turnpike.

[2] Section 3 of Special Act No. 36 provides: "The proceeds of such bonds shall be used (a) for the purchase of . . . [the Mathews estate] as a site for a public park and (b) to defray the expense of improving the same for such purpose."

158; *Keegan* v. *Thompson,* 103 Conn. 418, 421, 130 A. 707; *Lacava* v. *Carfi,* 140 Conn. 517, 520, 101 A.2d 795; *Old Colony Gardens, Inc.* v. *Stamford,* 147 Conn. 60, 62, 156 A.2d 515. Thus, the city has no power to establish or conduct a public park unless legislative authority so to do has been conferred. And the extent of any authority given measures the extent of the power possessed. In other words, without express legislative authority, a city hall could not be built on the Mathews estate unless the building of it was incidental and appropriate to the use of the property as a public park.

The defendants claim, on several grounds, that the city has authority to construct a city hall on the Mathews estate. The first ground is that the term "public park", as used in Special Act No. 36, and the term "civic center", which could include a city hall, are synonymous. The defendants' planning expert testified that the terms "public park" and "civic center", so far as the city of Norwalk is concerned, are synonymous. This evidence, however, is wide of the mark, if indeed it was admissible at all. The issue is what meaning the General Assembly expressed by the use of the words "public park" in the special act, not what the words "public park" may mean to those engaged in city planning, either in Norwalk or elsewhere. In the absence of anything in a statute to indicate the contrary, and we find nothing here, "words and phrases shall be construed according to the commonly approved usage of the language . . . ". General Statutes § 1-1; *State* v. *Moran,* 99 Conn. 115, 118, 121 A. 277; *Pierce* v. *Albanese,* 144 Conn. 241, 254, 129 A.2d 606. " 'In the common understanding, a park, in this country, is a piece of ground in or near a city or town for ornament and as a place . . . for recrea-

tion and amusement, and it is usually laid out in walks, drives and recreation grounds.' " *Fenwick* v. *Old Saybrook,* 133 Conn. 22, 29, 47 A.2d 849. There is no merit in the defendants' claim that, as used by the General Assembly in Special Act No. 36, the term "public park" embraces a civic center or a place on which a city hall could legally be erected.

Nor is there any merit in the defendants' claim that the General Assembly did not intend that the Mathews estate be used exclusively as a public park as distinguished from a civic center. This claim is based on the fact that at the public hearing on Special Act No. 36, held before a committee of the General Assembly, one of the two members of that body who presented the bill on behalf of the city testified that it was the intent of the city to use the Mathews estate both as a public park and as a civic center. This court, however, has held without exception that statements at such committee hearings are not admissible in the interpretation of a legislative act. *Litchfield* v. *Bridgeport,* 103 Conn. 565, 573, 131 A. 560; *Peck* v. *Fanion,* 124 Conn. 549, 553, 1 A.2d 143; *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233, 63 A.2d 154. Moreover, if such evidence were admissible it would serve only to defeat the defendants' claim. It may be true that the city asked the General Assembly for authority to issue bonds for the purchase of specific property on which to establish a public park and civic center. But the enabling act, although authorizing the issuance of bonds for the purchase of the specific property desired, granted further authority only to the extent of the establishment on the property of a park. The limited authority granted would merely confirm the fact that the legislative intent went no further than to permit the establishment,

on the property, of a public park in the accepted meaning of the term "park". This would not embrace a civic center.

In 1951, the General Assembly authorized the city to issue bonds for the construction and equipment of a municipal garage. 26 Spec. Acts 366, No. 523. This garage was actually built on the Mathews estate. The defendants claim that the enactment of this legislation shows that the General Assembly did not intend that the Mathews estate be used exclusively for public park purposes. This contention is unsound for at least two reasons. It is true that a subsequent legislative act may throw light on the legislative intent of an earlier related act. *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 242, 50 A.2d 59; *Hartford* v. *Suffield,* 137 Conn. 341, 346, 77 A.2d 760; *Brown* v. *Cato,* 147 Conn. 418, 421, 162 A.2d 175. The 1951 act, however, merely authorized the issuance of bonds for the construction of a garage on "city-owned property". There is nothing in the act to indicate that the General Assembly was aware that the garage was to be located on the Mathews estate. Indeed that property is not mentioned in the 1951 act. Thus, it cannot be said that this act was so related to the Mathews estate as to be relevant in an interpretation of the earlier act.

Even if the 1951 act had expressly authorized the erection of the garage on the Mathews estate, the position of the defendants would not be benefited, since the later act would operate as an implied repeal of the earlier one only to the extent that the later act was necessarily inconsistent with the earlier act. That is, the earlier act would be repealed only to the extent that the later act permitted the erection of the garage on what in all other respects

was to remain public park property. *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536.

Quite properly the city makes no claim that authority was granted for a "civic center" on the Mathews property under the provisions of §§ 390 and 391 of the General Statutes, Revision of 1930 (now General Statutes §§ 7-148 and 7-157, Revision of 1958), although the provisions of these statutes, hereinafter quoted, were in effect during this entire period and authorize any city, by ordinance, to "establish, maintain and conduct parks, playgrounds . . . recreation places and public gardens and make appropriations therefor". Obviously, the term "park" as used in these statutes has no broader meaning than the term "public park" as used in Special Act No. 36.

The court, in its memorandum of decision, and the parties, in their briefs, have made much of the issue of dedication, that is, whether or not the Mathews estate was ever formally dedicated by the city as a public park. It is unnecessary to consider this issue because neither under Special Act No. 36 nor elsewhere was power given the city of Norwalk to use the Mathews estate for any but park purposes in the accepted sense of the word "park". A municipality could not, by unilateral action on its part, whether in the form of a purported dedication or otherwise, enlarge a grant of power from the General Assembly.

The defendants also place some reliance on § 1 of Norwalk's charter; 16 Spec. Acts 1038, No. 352, § 1; which authorizes the city to purchase, hold and convey property, and on § 80 of the charter; 16 Spec. Acts 1061, § 80 (as amended, 18 Spec. Acts 909, § 3; 20 Spec. Acts 644, § 3); which authorizes the city, through its common council, "to take such action

as may be necessary or expedient not inconsistent with . . . the laws of this state . . . [t]o manage and control the finances and property . . . of the city."[3] These sections may generally authorize the erection by the city of a city hall on land owned by the city. But that is not the issue in this case. They do not, and could not, enlarge the legislative authority granted the city, which was to maintain a public park on the Mathews estate.

There is no error.

In this opinion the other judges concurred.

---

[3] Sections 1 and 80, as amended, of the charter are, respectively, §§ 1 and 185 of the 1956 edition of "The Code of the City of Norwalk, Connecticut."