[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On August 15, 1994, the plaintiff, Brenden P. Leydon, attempted to enter an area of Greenwich known as Greenwich Point Park. Greenwich Point is an area of land used by Greenwich residents and their guests for recreation purposes. The Point contains a nature preserve, picnic tables, marina, a beach bordering Long Island Sound, and a parking area.[1] On that day, the plaintiff was stopped at the Point gate by a town employee. The employee informed him that he could not enter the Point without a "beach pass." The plaintiff thereafter applied to the town for a pass, but was denied the pass because he was not a resident of Greenwich pursuant to the provisions of Greenwich Municipal Code Sections 7-36, 7-37 and 7-38.
The plaintiff has brought an action against the Town of Greenwich, the Lucas Point Association,[2] and various selectmen of the town challenging the constitutionality of three Greenwich Municipal Code Sections: 7-36, 7-37, and 7-38. Specifically, the plaintiff asserts eight causes of action: CT Page 8260 violation of freedom of speech/expression (count one); violation of the privileges and immunities of citizenship (count two); violation of substantive due process rights (count three); violation of equal protection and equality of rights (count four); violation of 42 U.S.C. § 1983 (count five); breach of the public trust (count six); and violation of public policy (counts seven and eight).
Greenwich Municipal Code Section 7-36 states: "Pursuant to the Charter of the Town and recognizing that public beaches, recreation places and facilities have been acquired and constructed by the Town usings [sic] its own funds for the use of the inhabitants of the Town and are operated and maintained by the Town using its funds for the use of its inhabitants, and further recognizing that said beaches, recreation places and facilities have a limited capacity and are insufficient to accommodate all persons and to avoid congestion, prevent breakdown, collapse and deterioration of said facilities and places, to protect the environment and prevent further ecological destruction, to encourage the acquisition of additional beaches, recreation places and facilities by the Town and to promote health, comfort, convenience and welfare, only inhabitants of the Town may enter, remain upon or use public beaches, recreation places and facilities except for guests of inhabitants of the Town pursuant to this ordinance and other applicable laws, ordinances and regulations promulgated by the Director." Greenwich Municipal Code Section 7-37 states: "Beach passes may be obtained by inhabitants of the Town from the Director pursuant to regulations and fees prescribed by him." And, Greenwich Municipal Code Section 7-38 states: "No person shall enter upon or be permitted on any beach without a duly issued beach pass except as herein provided."
The court begins its analysis by noting that the plaintiff attacks only the Greenwich ordinances. The plaintiff does not attack the underlying enabling act, 18 Spec. Acts 103, No. 124 (1919). This act states in relevant part: "The town of Greenwich may establish, maintain and conduct public parks, playgrounds, bathing beaches and recreation places, together with such means of transportation thereto, and may equip said parks, playgrounds, bathing beaches and recreation places with all necessary buildings and equipment for the use of the inhabitants of said town. . . ." It is under this Act that the town purchased the Point, and controls it to this day.[3]
CT Page 8261
"[A] presumption of validity is accorded to municipal ordinances. Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt. . . . The burden of proving the ordinance is invalid rests upon the party asserting its invalidity . . . and in this case, the burden is on the plaintiff." Pollio v. PlanningCommission, 232 Conn. 44, 49, 652 A.2d 1026 (1995).
 I. Violation of freedom of speech/expression
The plaintiff's first and most significant challenge to the subject ordinances is that the ordinances violate the constitutionally protected right to freedom of expression embodied in the first amendment to the United States constitution, as well as the constitution of Connecticut, article first, §§ 4 and 5.[4]
The plaintiff argues that the town's ordinances violate his right to freedom of expression. The defendants respond that the plaintiff's case lacks a characteristic required for addressing the constitutionally protected right to free speech. This characteristic, according to the defendants, is found in all cases dealing with such a claim: "In all of them, the law, order or policy claimed to abridge plaintiffs' free speech rights were laws, orders or policies purporting to bar certain expressive behavior — by kind or by conduct — in certain places."
The court agrees with the defendants that, as an initial matter, it is "necessary to determine whether [the plaintiff's] activity was sufficiently imbued with elements of communication to fall within the scope of the First andFourteenth Amendments[.]" Spence v. Washington, 418 U.S. 405, 409,94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974). Here, the court is not persuaded that the plaintiff's conduct touches upon "elements of communication." Simply stated, the plaintiff has failed to provide the court with evidence which would establish that he intended to enter the Point in order to "express himself" in any manner, regardless of whether the communication would be protected by the state and federal constitutions, or not.
The plaintiff implicates the First Amendment (and its state counterparts) by asserting that he was prevented from "exchanging ideas and information with other park users." However, the CT Page 8262 plaintiff has not provided the court with sufficient evidence which proves that the ordinances prevented him, or anyone from "exchanging ideas" with anyone else.
The plaintiff has shown only that he was denied access to Greenwich Point, by a town employee stationed at the gate to the Point, because he did not have a beach pass and was not accompanied by a Greenwich resident. The court is convinced that the town's subsequent denial of a pass to the plaintiff had absolutely nothing to do with the plaintiff's desire to engage in expression. Rather, the town denied him a pass because it has an ordinance limiting its granting of passes to Greenwich residents.
The court finds that the town does not have an ordinance, as the plaintiff would have the court believe, preventing non-residents from accessing the Point. The town's ordinances require only that a non-resident desiring entry to the Point be accompanied by a Greenwich resident. Therefore, if the plaintiff truly intended to express himself on the Point, he would have been able to do so, unimpeded, if he were accompanied by a Greenwich resident.
The plaintiff, in his memorandum, states that "the [t]own's ordinance prohibits free speech in a public forum for billions of people — all those who are not inhabitants of Greenwich."[5]
This, according to the evidence presented, is simply inaccurate. The ordinance places on non-residents a restriction which requires that they be accompanied by a Greenwich resident when accessing the Point. Once there, the non-resident can express whatever he wants to express.
The plaintiff often suggests throughout his arguments that the Greenwich ordinances have a "chilling effect" on a non-resident's constitutional right to free speech. The court is mindful of the doctrine which states: "[A] violation of constitutional magnitude may be established even though there has not been a complete abridgement or deprivation of the right. A constitutional violation may result, therefore, when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right."State v. Cassidy, 236 Conn. 112, 126, 672 A.2d 899 (1996). No such burden or impairment exists here. If the ordinances do have a "chilling effect" on speech rights, the plaintiff has failed to prove to the court beyond a reasonable doubt how they do.
"[W]e cannot accept the view that an apparently limitless CT Page 8263 variety of conduct can be labeled `speech' whenever the person engaging in the conduct intends thereby to express an idea.'"Spence v. Washington, supra, 418 U.S. 409. In the present case, the court is not convinced that the plaintiff ever intended to enter the Point in order to engage in the expression of an idea. And, if he had, the court is not persuaded that the subject ordinances prevented the plaintiff, or any non-resident from accessing the Point for purposes of protected expression.
 II. Breach of the Public Trust
The plaintiff next argues that Connecticut has a so-called "public trust" doctrine which entitles all residents of the state to use all municipally held properties in the state. The plaintiff first cites to language in Stradmore Development Corporation v.Commissioners, 164 Conn. 548, 551, 324 A.2d 919 (1973), as affirming the existence of this doctrine. There, the court stated that the "review of cases clearly establishes . . . that lands held by a town as a park are held not for its own benefit or that of its inhabitants but for the benefit of the people of the state at large[.]" This language must be viewed in the context of the case in which it was made.
In Stradmore Development, the trial court was faced with an application for a mandamus seeking a permit for construction of a sanitary sewer through a park which the parties agreed was "a public park maintained for public use." Stradmore DevelopmentCorporation v. Commissioners, supra, 164 Conn. 551. The Supreme Court, with minimal discussion, reasoned that since a park was "for the benefit of the people of the state," the attorney general could join the underlying action. Id., 552. The Court reversed the trial court's striking of the attorney general's counterclaim. Id. Stradmore Development does not, by any stretch of the imagination, establish a public trust doctrine as the plaintiff applies it.
The plaintiff also cites Baker v. Norwalk, 152 Conn. 312,315, 206 A.2d 428 (1965), for the proposition that "without express legislative authority, a city may not use park lands in a way that is not incidental and appropriate to the use of property as a public park." What the Baker court actually stated is that a city (or, in this case, a town) "has no power to establish or conduct a public park unless legislative authority so to do has been conferred. And the extent of any authority given measures the extent of the power possessed." Id., 315. CT Page 8264
Here, the legislature conferred authority upon the town to establish maintain and conduct public parks [and] . . . bathing beaches . . . for the use of the inhabitants of said town." 18 Spec. Acts 103, No. 124 (1919) The court finds, based on the evidence presented, that the town of Greenwich has not acted beyond the legislative authority conferred upon it. And, the court reiterates that the plaintiff does not challenge the legislative enabling act.
The "public trust doctrine" as applied to non-resident beach restrictions is a creature of modern New Jersey law. See NeptuneCity v. Avon-by-the-Sea, 61 N.J. 296, 294 A.2d 47 (1992) and VanNess v. Deal, 78 N.J. 174, 393 A.2d 571 (1978). This "broad doctrine derives from the ancient principle of English law that land covered by tidal waters belonged to the sovereign, but for the common use of all people. Such lands passed to the respective states as a result of the American Revolution." Neptune City v.Avon-by-the-Sea, supra, 294 A.2d 51. "The original purpose of this doctrine was to preserve for the use of all the public natural water resources for navigation and commerce, waterways being the principal transportation arteries of early days, and for fishing, an important source of food." Id., 52.
The New Jersey courts have applied this doctrine and held that municipalities "may not discriminate in any respect between their residents and non-residents." Neptune City v. Avon-by-the-Sea, 294 A.2d 55. The plaintiff here, however, has not provided the court with any authority which even remotely suggests that Connecticut applies the New Jersey public trust doctrine to its common law.
In a factually unrelated case, Mullen v. Horton,46 Conn. App. 759, 772, 700 A.2d 1377 (1997), an appellate court was faced with deciding whether it should adopt the doctrine of "apparent authority." The court noted that this doctrine had been adopted in other jurisdictions, but "because we are bound by Connecticut precedent . . . we conclude that the doctrine of apparent authority is inapplicable to this case." Here, absent controlling authority to the contrary, the court rejects, as applicable to the present case, the plaintiff's "public trust" arguments.
 III. Violation of the Privileges and Immunities of Citizenship
The plaintiff stated to the court, during closing arguments, that a claim for a violation of the privileges and immunities of CT Page 8265 citizenship does not require a separate analysis from a "free speech" analysis. Specifically, the plaintiff argues that "the use of parks under both common law and first amendment analysis is a privilege and immunity of citizenship which [the town] has denied." The plaintiff fails to brief this point, arguing only that this claim derives from his free speech claim. Under the plaintiff's own analysis, therefore, the court need not further address this issue.
 IV. Violation of Substantive Due Process Rights
The plaintiff also stated, during closing arguments, that in order to prevail under this claim, he must show that the town's "laws are completely unfair in a fundamental sense and the sense that they inhibit the exercise of fundamental rights. And, additionally, [the ordinances are] completely irrational and arbitrary." This is not an accurate statement of law. And, even if it is an accurate statement of law, the plaintiff has failed to prove that the town's ordinances "are completely unfair in a fundamental sense."
"The fourteenth amendment to the United States constitution
provides that the `State [shall not] deprive any person of life, liberty, or property, without due process of law. . . .' In order to prevail on his due process claim, the [plaintiff] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law." State v. Matos, 240 Conn. 743, 749,694 A.2d 775 (1997). "A constitutionally cognizable property interest is a prerequisite to the attachment of constitutional procedural and substantive due process rights." Grimes v.Conservation Comm. of the Town of Litchfield, 243 Conn. 266, 271-72,703 A.2d 101 (1997).
In the present case, the plaintiff has neither shown, nor attempted to show what property interest has been deprived by virtue of the town's ordinance. The plaintiff also virtually abandons this point in his memoranda. The court, therefore, rejects the plaintiff's due process arguments.
 V. Violation of Equal Protection and Equality of Rights
The plaintiff argues, in his brief, that the town's ordinances violate "the public use test established by the Connecticut Supreme Court by limiting the clearly established right of the public at CT Page 8266 large to use and enjoy the benefit of the public trust in municipally held parks and the shore." This, in turn, according to the plaintiff, violates his "rights to equal protection and equality of rights as guaranteed" by the state and federal constitutions.
The plaintiff has made no attempt to explain to the court, either by way of written brief or oral argument, how a litigant establishes a violation of its state and federal constitutional equal protection rights. Rather, the plaintiff cites Barnes v.New Haven, 140 Conn. 8, 14, 98 A.2d 523 (1953), as establishing a "public use test."
The court does not see a legal or logical connection between the "public use test" and the state and federal constitutional rights to equal protection. And, the plaintiff has not indicated to the court the basis for that nexus. In fact, the plaintiff fails to provide any federal constitutional analysis on this issue. The plaintiff's state constitutional analysis, in his memoranda, involves only quoting article first, § 1, of the Connecticut constitution.
In Connecticut National Bank v. Giacomi, 242 Conn. 17, 44-45,699 A.2d 101 (1997), the court stated: "The plaintiff's equal protection claim fails due to its inadequate briefing. We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . We decline to address such a broad and undeveloped claim." (Citation omitted.) Such is the case here.
 VI. Violation of 42 U.S.C. § 1983 et seq.
The plaintiff states that "[a]ny of the federal constitutional claims . . . simply fall under the statutory analysis." Therefore, this claim does not "require a separate analysis." Since the court has rejected the plaintiff's federal constitutional claims, under the plaintiff's analysis, the court also rejects the plaintiff's 42 U.S.C. § 1983 claim.
 VII. Violation of Public Policy
The public policy that was violated by the town, according to the plaintiff, is "a well known public policy in the State of Connecticut and the United States that all public parks are open to the public at large." The plaintiff, however, does not provide the court with any binding authority which suggests that such a CT Page 8267 public policy exists as applied to the present case.
 VII. Defendant Lucas Point Association's arguments
LPA argues that if the court agrees with the plaintiff that the ordinances do not pass constitutional muster, the court should consider LPA's concern that the narrow easement owned by it and granted to the town, as well as the surrounding area, would be overburdened by an onslaught of additional traffic. The court has determined that the challenged ordinances are valid. Nevertheless, the court is aware of the sensitive nature of this case and is compelled to briefly make factual findings in response to LPA's main arguments.
LPA's overburdening argument is not persuasive for several reasons. First, whether an easement might be overburdened is irrelevant to the question of whether an ordinance is constitutionally valid. This is especially true when the ordinance in question is not related to the easement and there is no evidence that the ordinance was passed in contemplation of the easement. Further, the defendants provide evidence that the Point's parking area is already often filled to capacity. (In fact, LPA states in its memorandum: "At present[,] the [d]riftway is at maximum capacity on many occasions, primarily during the summer months. On many days, the traffic backs up for a significant distance with automobiles waiting to enter the [d]riftway.") A burden on anything cannot increase where the thing is already burdened to the maximum extent possible. LPA also concedes that there exists alternatives which would alleviate the burden on the easement, such as busing visitors in to the Point from outside parking areas.
LPA presents compelling evidence which indicates that opening the beach to non-residents would have a significant negative effect on the environmental aspects of the Point. LPA also presents evidence to show that opening the beach to non-residents would have a negative environmental impact on the surrounding property, which is owned by LPA members. The court finds that should the Point be open to the public without restriction, there would be a significant negative environmental effect on the Point and the surrounding area. This finding, however, has not impacted the court's ultimate decision. Whether this type of environmental concern can override certain constitutional rights is an issue saved for another day.
CT Page 8268
Finally, LPA has proved to the court that the easement granted to the town was done so with the intention that only Greenwich residents (and their guests) use the easement. The court need not, however, reach the issue of the effect of this intention on the plaintiff's claims.
Based on the above discussion, the court finds that the plaintiff has not met his burden of proof beyond a reasonable doubt that the Greenwich ordinances are invalid. Therefore, judgment enters for the defendants on all of the plaintiff's claims.
KARAZIN, J.