[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THIRD-PARTY DEFENDANTS LORAN FINDORAK DRILLING, INC.'S AND PATRICE GENEST'S MOTION TO STRIKE
In this action, based in part upon a product liability claim, Loren Findorak Drilling, Inc. and Patrice Genest (hereinafter collectively referred to as "Findorak Drilling"), as CT Page 3273 third-party defendants, through a motion to strike, raise the issue of whether a product seller under the Connecticut Product Liability Act; General Statutes 52-240a, 52-240b, 52-572m
through 52-572r and 57-577a (hereinafter referred to as "C.P.L.A.") has a right to seek contribution against a non-product seller.
Suit was brought by the plaintiff Russell Babcock, as conservator of the estate of Thomas Babcock, for damages as a result of personal injuries sustained by Thomas Babcock when the motorcycle he wee operating collided with a truck. The plaintiff seeks to hold liable for such damages New Haven Suzuki, Inc., David MacQuarrie and David Ferla (hereinafter collectively referred to "Suzuki") under the C.P.L.A. and Findorak Drilling under principles of negligence (common law and statutory) for the operation of the truck which collided with the motorcycle.[1]
Suzuki, as third-party plaintiffs, brought a third-party complaint against Findorak Drilling seeking contribution and indemnification.
The C.P.L.A. authorizes, at least within the context of a product liability claim, contribution between joint tortfeasors; General Statutes 52-5720 (e)[2]; and, notwithstanding the statutory preconditions, that remedy is available in an action for damages based upon a product liability claim by impleading the prospectively liable third party. Malerba v. Cessna Aircraft Co.,210 Conn. 189, 195 (1989) (Harmonizing the preconditions of 52-1
5720(e) with 52-102a and 52-577a(b) in order to conclude that they "apply only to those circumstances where a party elects to pursue an independent cause of action for contribution"). Findorak Drilling, however, argues that since contribution is authorized by the C.P.L.A. it must be interpreted as allowing contribution only between product sellers as defined by the Act.[3]
Since Findorak Drilling's alleged liability does not fall within C.P.L.A. — that is, they are not product sellers — they seek to strike that count for contribution.[4] The court does not agree with Findorak Drilling's narrow reading of 52-5720(e).
The count seeking contribution between joint tortfeasors, whether or not both are product sellers, states a legally sufficient cause of action for two reasons. First, C.P.L.A. authorizes contribution between joint tortfeasors. General Statutes 52-5720. There is no statutory requirement under C.P.L.A. that limits contribution between only product sellers. A reasonable reading and harmonizing of 52-577a(b) (which gives the product seller the right to implead "any third party who is or may be liable for all or part of the claimant's claim" (emphasis supplied)) with 57-5720(a), (b), (c) and (d) (which establishes a scheme for apportioning the damages sustained by the claimant according to the responsibility of the parties, including any CT Page 3274 third party who may or may not be a product seller) and yet maintains for the claimant the right to a judgment against all the responsible parties on the basis of common law joint and several liability, reinforces that the intent of C.P.L.A. is to abrogate the rule against contribution between all liable parties whether or not they are product sellers. In interpreting statutes, "a reviewing court must, as far as possible, reconcile its wording with other statutes, especially those enacted as part of the same legislation, in order to render an overall reasonable interpretation." Shelby Mutual Ins. Co. v. Della Ghelfa,200 Conn. 630, 637 (1986).
Indeed, Malerba v. Cessna Aircraft Co., supra, lends support to Suzuki's argument that there is a right to contribution between product seller and one who is not a product seller. Although the issue before the court was whether the requirements of 52-5720 were preconditions to the right of contribution, the claim upheld in Malerba for contribution was made by a product seller against negligent third-party defendants who were not product sellers within the meaning of the C.P.L.A. Supreme Court Rec. Briefs in Malerba v. Cessna Aircraft Co., Nov., 1988, p. 23 (see third-party complaint).
Furthermore, the drafters obviously used as a basis for the C.P.L.A. the Model Uniform Product Liability Act (hereinafter "Model Act") adopted by the United States Department of Commerce; 44 Fed. Reg. No. 212, 62714-62750 (1979) which provides for contribution between those who caused the harm without limitation other than their joint and several liability. Id. 113. Surely, in determining the contours of our law, the court should take into consideration the Model Act and its stated analysis even though the C.P.L.A. does not mirror it. Dowaliby v. Hartford Federation, of Teacher, Local 1018, 180 Conn. 459, 462 (1980). Moreover, the analysis of 113 in the Model Act makes clear that its provisions incorporate the Uniform Comparative Fault Act, 12 U.L.A., 1990 Supp. 39, which in 4 provides in part that there is a right to contribution "between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm. . . .
Finally, one of the purposes of the C.P.L.A. was to equitably distribute the costs of the claimant's injury in accordance with the manner each tortfeasor and the claimant contributed to the event which proximately caused the injury. See Model Act, 44 Fed. Reg. No. 212, 62715 (1979). This purpose would be defeated if a product seller was not allowed the right of contribution from a party who was not a product seller but whose negligence was a substantial factor in causing the harm.
The second reason that the cause of action for contribution CT Page 3275 should be allowed is that the legislature by adopting C.P.L.A. changed our public policy. It is clear that by authorizing a product seller to seek contribution from a joint tortfeasor, the foundation of the rule that prohibits it has been undermined. The tenuous underpinnings of the rule against contribution must be reviewed in order to understand the full impact of C.P.L.A. on it.
The rule had its origin in the 1799 case of Merryweather v. Nixan, 8 Term Rep. 186, 101 Eng. Rep. 1337. It is based upon the public policy that the court will not aid a wrongdoer for his own turpitude. 18 Am.Jur.2d, Contribution, 34 ; Wright FitzGerald, Conn. Law of Torts, 2d Ed., 175. "The reason assigned in the books for denying contribution among trespassers is, that no right of action can be based on a violation of law, that is, where the act is known to be such or is apparently of that character. A guilty trespasser it is said can not be allowed to appeal to the law for indemnity, for he has placed himself without its pale by contemning it, and must ask in vain for its interposition in his behalf." Bailey v. Bussing, 28 Conn. 455,458-59 (1859).
Merryweather, however, involved an intentional tort. Prosser, Torts 50, p. 336. Nobody quarrels with the underlying reasoning which would prohibit contribution between those who intentionally cause harm to others. Restatement, Second, Torts 886A(3). As a general rule, the law should not come to the aid of one who intentionally inflicts a harm on another. Indeed, it was later made clear in England that "the rule against contribution did not apply unless the plaintiff was a wilful and conscious wrongdoer." Prosser, supra.
Nevertheless, in the development of the common law in the United States, "the reason for the rule against contribution was lost to sight." Restatement, Second, Torts 886A, comment a. In Connecticut, from the beginning, the rule against contribution was embedded in the dicta of the Supreme Court and parroted without any attempt to distinguish intentional from unintentional conduct.[5] E.g. Fox v. Fox, 168 Conn. 592, 595 (1975); Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405, 412 (1965); Fidelity Casualty Co. v. Jacob Ruppert, Inc., 135 Conn. 307, 311 (1949); Rose v. Heisler, 118 Conn. 632, 633 (1934); Caviole v. Shea,116 Conn. 569, 575 (1933); Comment, 22 Conn. B.J. 171, 172 (1948).
It was not until Gomeau v. Forrest, 176 Conn. 523 (1979) that the law prohibiting contribution between joint tortfeasors was directly and seriously challenged. The third-party plaintiffs in Gomeau sought contribution from the third-party defendants on the grounds of a change in public policy by our legislature when it adopted comparative negligence; General Statutes 52-572h; CT Page 3276 which did away with the inequitable rule that contributory negligence was a bar to recovery. The theory of the third-party plaintiff in Gomeau was that by eliminating the bar to the plaintiff's recovery when he or she was contributorily negligent, a first cousin to the rule of no contribution between joint, tortfeasors,[6] signified the legislature's intention to change our public policy in both doctrines. Nevertheless, the court in Gomeau rejected the challenge holding that the state's public policy of not allowing contribution between joint unintentional. tortfeasors remained unchanged. Id. at 526.
Gomeau, however, did give some insight as to when the court would consider that the legislature has changed our public policy. The court pointed out that "[n]owhere in the wording of the statute is there any indication that the legislature intended to change the longstanding common-law rule against contribution among joint tortfeasors." Id. at 526. In the present case, the legislature, by the adoption of the C.P.L.A., authorized contribution between joint tortfeasors and thereby specifically changed the public policy of the state by abrogating the rule against contribution. General statutes 52-5720 (e). Any other contraction would fly to the face of the text of the statute and produce the bizarre result of the state having one public policy concerning contribution for product liability sellers and another for all other tortfeasors.
The courts when establishing or adopting rules of law, as they did when they established the rule against contribution between joint tortfeasors, only make a presumption as to the public policy of our state. See New Haven Metal Heating Supply Co. v. Danaher, 128 Conn. 213, 222 (1941). But it is also certain that the ultimate determination of the state's public policy is a matter for the legislature. Old Colony Gardens, Inc. v. Stamford,147 Conn. 60, 64 (1959). "The legislature is the arbiter of public policy. . .", State v. Gilletto, 98 Conn. 702, 714
(1923); Lyman v. Adorno, 133 Conn. 511, 514 (1947); and it has spoken with regard to the rule against contribution as it pertains to unintentional tortfeasors.
Taking into account the tenuous basis for this doctrine against contribution, which serves no logical, practical or moral basis, and the specific mandate of our legislature under 52-5720 (e), the public policy of this state now allows contribution between joint unintentional tortfeasors, whether or not their liability arises under C.P.L.A.
The motion to strike is denied.
Robert I. Berdon, Judge CT Page 3277
FOOTNOTES