CHARLES M. BURTON ET AL. *v.* CITY OF HARTFORD ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 11—decided November 20, 1956

*Frederick U. Conard, Jr.,* with whom was *Richard M. Feingold,* for the plaintiffs.

*Elihu H. Berman,* assistant corporation counsel, with whom was *George J. Ritter,* corporation counsel, for the defendants.

INGLIS, C. J.   The plaintiffs in this action are owners of properties in Hartford which are used for dwelling purposes and constitute controlled housing accommodations. The plaintiffs are, of course, taxpayers. They instituted the action against the city, its treasurer and its temporary city housing rent commissioner, praying a declaratory judgment determining whether "An Ordinance concerning Controlled Housing Accommodations," enacted March 26, 1956, by the court of common council of Hartford, is valid in whole or in part. The plaintiffs also prayed for injunctive relief. The case has been reserved for the advice of this court.

The provisions of the ordinance, so far as they are material to the questions propounded in the reservation, may be summarized as follows: The ordinance recites in its opening paragraphs that a housing emergency exists in the city of Hartford as a result of the second world war, the Korean emergency, and the effects thereof, and that since state rent controls will expire on March 31, 1956, it is necessary, in order to preserve the public peace, health, safety, comfort and welfare of the inhabitants of the city, that rent

and eviction controls be adopted by the court of common council as a temporary expedient in the exercise of its police power.

Part A of the ordinance provides that "[n]o person shall bring any action of summary process to recover possession of any land, building, [or] any apartment in any building . . . except (a) for nonpayment of rent; (b) for nuisance; (c) when the landlord seeks in good faith to recover possession for the immediate use . . . by himself or members of his immediate family . . . ; (d) when the landlord seeks in good faith to recover possession for the immediate purpose of remodeling substantially . . . in a manner which cannot practicably be done with the tenant in possession . . . ; (e) when the landlord seeks in good faith to recover possession for the immediate purpose of demolishing the building . . . ; (f) when the landlord seeks in good faith to recover possession for the immediate purpose of converting a housing accommodation to a business use . . . ; (g) when the landlord seeks in good faith to recover possession . . . for the immediate purpose of withdrawing such premises from the rental market; (h) when the tenant is violating a substantial obligation of his tenancy other than the obligation to surrender possession . . . ; (i) when the tenant is using or permitting the housing accommodation to be used for an immoral or an illegal purpose; or when occupancy by the tenant is illegal . . . ; (j) when the tenant has unreasonably refused the landlord access to the housing accommodation for the purpose of making necessary repairs or improvements required by law . . . ; and (k) when the tenant's lease or other rental agreement has expired . . . and at the time of termination the occupants of the housing accommodation are subtenants or other persons who occupied under a rental

agreement with the tenant, and no part of the accommodation is occupied by the tenant as his dwelling."

Part B-1 of the ordinance is entitled "Definitions." In it "controlled housing accommodation" is defined as "all housing accommodations except the following," and then follows a list of nine exceptions. Two of those exceptions are "(g) housing accommodations in one family houses which are or become vacant on or after the effective date of this ordinance" and "(h) housing accommodations in two- and three-family houses which are or become vacant on or after the effective date of this ordinance, provided the landlord resides in a housing accommodation in said house."

Part B-2 provides for the appointment of a temporary city housing rent commissioner and sets forth his duties. Among other things he is authorized, "from time to time, to make such regulations and orders, consistent with the provisions of this ordinance, as he may deem necessary or proper to effectuate the purposes and carry out the provisions of this ordinance."

Part B-3 directs that during the effective period of the ordinance no person shall demand, accept or receive rent for any controlled housing accommodation in excess of that allowed under the expiring state law, except that in cases of hardship the rent commissioner may authorize an increase in rent and except that a landlord may increase rents by 15 per cent where there is no agreement between him and his tenant to the contrary. A paragraph under B-3 denominated (IV) authorizes the commissioner by regulation or order to "regulate or prohibit . . . practices relating to recovery of possession, in connection with any controlled housing accommoda-

tions, which in his judgment are equivalent to or are likely to result in rent increases inconsistent with the purposes of this ordinance."

Part B-5 relates to the enforcement of the ordinance and provides that any person who wilfully violates any provision of it or any order or regulation of the commissioner shall be fined not more than $100 or imprisoned not more than thirty days, or both, but that no prosecution shall be started except upon written complaint of the commissioner.

Part C, headed "Separability," is of importance in the decision of the case. It reads: "Rent controls and eviction controls are each, in and of themselves, hereby declared to be essential to the preservation of the public peace, health, safety, comfort and welfare; if part A of this ordinance or the application thereof to any person or circumstances shall be held invalid, the validity of part B thereof and the applicability of same to other persons or circumstances shall not be affected thereby, and if any provision of this ordinance or the application thereof to any person or circumstances shall be held invalid the validity of the remainder thereof and the applicability of same to other persons or circumstances shall not be affected thereby."

Part D directs that the ordinance shall take effect upon the termination of state rent controls and shall terminate on March 31, 1957, or upon a determination by the council that the emergency has ceased to exist, whichever is sooner.

The questions reserved for the advice of this court are eight in number and are set forth in the footnote.[1] It should be noted that questions 1 and

[1] "1. Assuming the existence of a housing emergency, did the City of Hartford have the power to enact the ordinance . . . ?

"2. If any of the provisions of the ordinance are invalid, is the

2 are predicated upon an assumption that a housing emergency existed when the ordinance in question was enacted. Ordinarily, we do not consider questions reserved unless they are such as in the opinion of the court will be reasonably certain to enter into the decision of the case. Practice Book § 469. On their face, the questions here reserved are not calculated to elicit answers which will necessarily be involved in the ultimate decision of the case. In the form in which the questions are propounded, answers to them would be of assistance to the trial court only in the event that it developed as a matter of fact that a housing emergency did exist. In the view we take of the case, however, as will later appear, the result reached would be the same whether a housing emergency existed or not. We, therefore, will answer the questions.

Whether the ordinance is invalid in whole or in part depends, among other considerations, upon whether the charter of the city of Hartford grants to the court of common council the power to enact it.

---

entire ordinance thereby invalidated?

"3. Did the City, by its legislative body, have the power to determine the existence of such an emergency?

"4. Can a housing shortage, not proximately caused by or resulting from the effects of some disaster such as war, fire, flood, earthquake, pestilence or famine, constitute such an emergency, as a matter of law?

"5. Does the trial court have the power to determine whether a housing emergency, in fact, existed at the time of the passage of the ordinance?

"6. If the answer to question 5 is in the affirmative and if the trial court finds that no such emergency then existed can it declare the ordinance invalid?

"7. Does the trial court have the power to determine whether a housing emergency exists at the time of the trial?

"8. If the answer to question 7 is in the affirmative, and if the trial court finds that no such emergency then exists, can it declare the ordinance invalid?"

The charter provides: "The city shall have power to adopt ordinances not in conflict with the general statutes or the provisions of this charter, for the preservation of the public peace, health, safety, comfort and welfare of the inhabitants of the city, and to provide penalties for the violation thereof enforceable in the city and police court but not exceeding a fine of one hundred dollars or imprisonment for more than thirty days or both." Hartford Charter, § 12 (1949); 25 Spec. Laws 38, § 4.

We will assume without deciding that the effect of the phrase "for the preservation of the public peace, health, safety, comfort and welfare of the inhabitants" is to grant to the city the power to enact ordinances that are within the police power. Temporary rent and eviction control legislation is clearly an exercise of that power. *Block* v. *Hirsh,* 256 U.S. 135, 156, 41 S. Ct. 458, 65 L. Ed. 865. By the terms of the charter, however, the power of the city to adopt ordinances is limited to the enactment of those "not in conflict with the general statutes." Chapter 411 of the General Statutes, which is now again in full effect since the expiration of the state rent control law on March 31, 1956 (Cum. Sup. 1955, §§ 2965d, 2966d), authorizes a landlord, upon the termination of his tenant's lease, to evict the tenant by summary process. See Cum. Sup. 1955, § 3217d. Part A of the ordinance in question prohibits a landlord from resorting to summary process to regain possession of controlled housing accommodations except in a limited number of cases, even though the tenant's right to possession has terminated. Moreover, part B-3 (IV) authorizes the rent commissioner by regulation or order to regulate the recovery of possession of any controlled housing accommodations. In these particulars the ordinance is obviously in con-

flict with the general statutes relating to summary process.

The defendants seek to avoid this conclusion by following the line of reasoning adopted by the Pennsylvania court in *Warren* v. *Philadelphia,* 382 Pa. 380, 385, 115 A.2d 218. This is, in substance, that the statutes relating to summary process do not affect substantive rights. They apply only when under the law the landlord has the substantive right to recover possession. On the other hand, it is argued, the rent control ordinance does affect substantive rights. It provides that with reference to controlled housing the landlord does not have a substantive right to recover possession. Accordingly, they say, the summary process statutes operate in a different field from that in which the ordinance operates. The answer to that is that the ordinance now before us, different from the ordinance in the Pennsylvania case, does not provide that the landlord has no substantive right to recover possession upon the termination of the lease. It does not preclude the landlord from adopting the lengthy procedure of ejectment. All that it provides is that he may not proceed by way of summary process. It follows that both the statutes and the ordinance relate to remedial rather than substantive rights. They both operate in the same field. They are in conflict. Consequently, so much of the ordinance as forbids, or permits the restriction of, the use of summary process as a means of recovering possession falls within the provision of the charter that city ordinances must not be in conflict with the general statutes and is, therefore, invalid.

The next question is whether the invalidity of those portions of the ordinance renders the whole ordinance invalid. This is a question of sepa-

rability. The rule is well established in this jurisdiction that "[w]here two or more parts of a statute are challenged, the test is whether they are so mutually connected and dependent as to indicate a legislative intent that they should stand or fall together." *Amsel* v. *Brooks,* 141 Conn. 288, 300, 106 A.2d 152; *Branch* v. *Lewerenz,* 75 Conn. 319, 324, 53 A. 658; *State* v. *Wheeler,* 25 Conn. 290, 299. So, in *Beach* v. *Bradstreet,* 85 Conn. 344, 352, 82 A. 1030, we applied the rule to a statute which provided for the payment of a bonus to all civil war veterans resident in the state. We held that the provision for the payment of the bonus to those veterans who had not been residents of the state at the time of their induction into service was unconstitutional and that inasmuch as the legislative intent was that all veterans resident in the state at the time of the enactment should receive the bonus and it would not accomplish that intent if those veterans then resident but not resident at the time of induction did not receive it, the entire legislation was invalid.

In the ordinance now before us there is a so-called separability clause which is quoted in full earlier in the opinion. The gist of this is that it is the legislative intent that rent controls and eviction controls are each and of themselves essential and that if part A of the ordinance, relating to eviction controls, is held invalid the validity of part B, relating for the most part to rent controls, shall not be affected thereby and vice versa. The law is, however, that such a separability clause is not conclusive. As is stated in 2 Sutherland, Statutory Construction (3d Ed.) at page 182, "[t]he separability clause is a comparatively modern legislative device, the courts having separated statutes long before its innovation." And, at page 184, "[t]he authority of a court to eliminate

invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but rather flows from powers inherent in the judiciary. Thus to say that a saving clause is 'indisputable evidence' of legislative intent to pass part of an act irrespective of void provisions is to put too great an emphasis on the mechanical inclusion of such provisions within an enactment. Separability clauses should be given reasonable consideration, but should not, at least under present usage, be paid undue homage." And again, at page 185, "the effect of a separability clause in an enactment is to replace a presumption that the statute was meant to be indivisible by a presumption in favor of separability. This latter presumption must be overcome by proof of considerations making evident the inseparability of the statute."

The question before us is, therefore, whether in spite of the separability clause the provisions of the ordinance relating to eviction control and those relating to rent control are so mutually connected with and dependent on each other that they warrant a belief that the court of common council would not have adopted the rent control provisions independently of the eviction control provisions. On this point it is to be noted that by virtue of part B-1 of the ordinance, housing accommodations in one-family houses and housing accommodations in two- and three-family houses occupied in part by the landlord cease to be subject to any control if and when they become vacant after the effective date of the ordinance. Accordingly, if by reason of the invalidity of the eviction control provisions of the ordinance landlords may create vacancies quickly by way of summary process, there is no practical way of enforcing rent control as regards such housing ac-

commodations. Thus the rent control provisions of the ordinance become in large measure unenforceable. It is also to be noted that, by virtue of part B-1 of the ordinance, a house for four or more families would still be subject to the rent control provisions. The owner of such a house might successfully maintain that rent control could not be enforced against him on the ground that he would be unreasonably discriminated against in violation of his constitutional right to the equal protection of the laws. There is no consideration relating to the purposes of the legislation which would reasonably justify treatment of owners of larger houses in a way different from that in which owners of one-, two- or three-family houses are treated. See *Schwartz* v. *Kelly*, 140 Conn. 176, 181, 99 A.2d 89; *State* v. *Cullum*, 110 Conn. 291, 295, 147 A. 804. To make the rent control provisions workable or even constitutional without the eviction control features, they would have to be remodeled. Such remodeling is not within the powers of a court.

We, therefore, conclude that the rent control provisions of the ordinance are so dependent upon the validity of the eviction controls that it is inconceivable that the court of common council would have enacted the one without the other. This is so clear that it overcomes the presumption of separability created by the separability clause. We are supported in this conclusion by two cases from other jurisdictions: *F. T. B. Realty Corporation* v. *Goodman*, 300 N.Y. 140, 148, 89 N.E.2d 865; *Heubeck* v. *Mayor*, 205 Md. 203, 212, 107 A.2d 99. In both of these cases the courts had before them rent control legislation substantially the same in form as the Hartford ordinance. In each case the court concluded that the eviction control provision of the legislation

was invalid and, in spite of a separability clause equivalent to that in the Hartford ordinance, held that the legislation was indivisible and that, therefore, the legislation was invalid in toto.

In view of our conclusion that the ordinance before us is invalid in its entirety irrespective of whether it was adopted to meet a housing emergency, it becomes unnecessary for us to answer any of the questions propounded in the reservation except those numbered 1 and 2.

We answer question 1 in the negative and question 2 in the affirmative. Questions 3, 4, 5, 6, 7 and 8 will not be answered.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.