[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal under Section 8-30g of the General Statutes presents the following issues: (1) Whether the Newington Planning CT Page 193 and Zoning Commission was authorized under its own regulations or under the General Statutes to limit, by way of special exception, the percentage of low and moderate income units which comprise a statutorily qualified affordable housing development, and (2) whether diversity of economic class in an affordable housing development constitutes a substantial public interest within the meaning of subdivision (c)(2) of the statute, and if so, whether that public interest clearly outweighs the need for affordable housing.
The facts necessary for a resolution of the issues in this case are simple. The plaintiff applied for a special permit and concomitant site plan approval to construct 128 affordable housing units in a Planned Development Zone. The commission granted the application but limited the number of affordable units to forty percent (40%) of the total units for the development. It further conditioned its approval on construction of a swimming pool to serve the residents of the development. In response to this decision, the plaintiff filed an application with the commission to remove both the limitation and the condition. The commission denied the application but revised the percentage of affordable housing units upward to fifty percent (50%) of the total. The plaintiff claims to be aggrieved by this action because although the application was granted, the restriction on the number of affordable units will have a substantial adverse impact on the viability of the affordable housing development (Section8-30(g)(d)).
In its brief, the plaintiff takes the alternative position that it is statutorily aggrieved because it was the owner of the property at all times at which the commission acted. Goldfeld v.Planning and Zoning Commission, 3 Conn. App. 72 (1985); the evidence at trial clearly established this. The defendant argues that to be an owner is insufficient; rather it asserts that the plaintiff must allege and prove some specific injury to that adverse interest. Walls v. Planning and Zoning Commission,176 Conn. 475, 477 (1979). It further contends that because the plaintiff's application was granted, it has suffered no injury. The court disagrees for the simple reason that this position overlooks the fact that this owner was granted substantially less than it requested and so in fact, the plaintiff's application aspresented to the commission was denied. To this extent, the plaintiff has suffered a specific injury and is aggrieved.
In support of its claim that the fifty (50%) percent CT Page 194 limitation and the swimming pool requirement will have a substantial adverse impact on the viability of the development, the plaintiff has elected to rely on the record developed before the commission and has not sought to expand the record pursuant to Section 8-a(k). There is ample, uncontradicted evidence in the record which supports the allegations of non viability created by the limitation on the number of affordable units in the development. The plaintiff is found to be aggrieved on this ground as well.
 I. THE COMMISSION'S AUTHORITY
The commission makes no claim that its site plan review powers invoked pursuant to §§ 3.19 and 5.3 of its regulations confer the right either expressly or by implication to impose a limit on the percentage occupancy of a residential building by persons of a given economic class. Indeed, in the absence of any provision in the site plan regulations explicitly conferring such authority, no such right exists. T.L.C. Development, Inc. v. Planning andZoning Commission, 215 Conn. 527 (1990). It is obvious in reading § 5.3 that such is the case.
The same rule however does not apply to the special permit power.[1] It is well settled that a planning and zoning commission pursuant to appropriate regulations may impose reasonable conditions not specifically articulated in the regulations which are necessary to protect the health, safety, convenience and property values adjoining the specific site of the project under review. Shulman v. Zoning Board of Appeals, 154 Conn. 426 (1967). Section 3.19.1B provides, that the use, its height and its density "must be declared to meet a community need and to be compatible with the environment".[2] The defendant does not contend that it derives its power to limit the number of affordable units from this provision. Rather, it argues at p. 13 of its brief that it gains the right to do so from its general statutory power to protect the public health, safety, convenience and property values under Section 8-2(a).
At trial and in its supplemental brief the defendant argued that Section 8-2(a) which requires that zoning regulations promote economic diversity in housing constitutes the source of its power. This argument fails for at least two reasons. First, if the statute mandates anything it is regulations which promote economic CT Page 195 diversity, not conditions initiated through the special exception process. Secondly, the defendant takes this provision out of context and thus misreads it. The particular sentence involved states in pertinent part that "Such regulations shall also promote housing choice and economic diversity, including housing for bothlow and moderate income households." (Emphasis supplied). This provision must be read in conjunction with and in the context of the preceding sentence which states that "such regulations shall also encourage the development of housing opportunities, including opportunities for multi-family dwellings consistent with soil types, terrain and infrastructure capacity, for all residents ofthe municipality in the planning region in which municipality islocated". (Emphasis supplied). Whatever mandate for economic diversity is created by the former provision it is intended to be inclusionary rather than exclusionary in scope. In other words, the statute means that all municipalities are required through the instrument of the zoning regulations to promote housing which includes rather than excludes households of low and moderate income. This provision should not be construed as conferring upon municipal zoning commissions the power to limit the number of households of a defined economic class which may inhabit a particular development.
Apparently relying on its police power, the defendant argues that its power is broad enough to include the authority to set such a limit. Similar issues were dealt with by our Supreme Court inCapalbo v. Planning and Zoning Board of Appeals, 208 Conn. 480
(1988) and Builders Service Corporation v. Planning and ZoningCommission, 208 Conn. 267 (1988). In Capalbo, the zoning authority argued that the right to regulate the color of signs stemmed from the board police powers that Section 8-2 confers upon municipalities to promote health and general welfare through zoning. After applying the well recognized principle that zoning authorities possess only such powers as have been delegated to them by the legislature, the court proceeded to hold that on the basis of the maxim expressio unius est exclusio alterius, the explicit mention of the power to regulate height, size and location of advertisement signs forbade the regulation of the color of the sign.
Application of the court's analysis in Capalbo to this case leads to the same conclusion, namely, that the explicit language chosen by the legislature (which includes affordable housing) implies a prohibition against a municipality placing an arbitrary limit on the number of such persons eligible for affordable housing CT Page 196 who may reside within the municipality or in any housing development located therein.
In Builders Service Corporation v. Planning and ZoningCommission, supra, the court ruled that while the zoning authority's statutory power to regulate the size of a dwelling includes the right to establish a minimum floor area, nevertheless, the denial of access to housing by persons of low and moderate income is "unequivocally not a purpose authorized by Section 8-2". Id. at 298.
The Newington commission's economic density cap is similar in some respects to North Branford's fifty percent (50%) affordable housing requirement that was involved in Indian River Associates v.North Branford Planning and Zoning Commission,6 Conn. L. Rptr. No. 13, 372 (1992). In that case, the Zoning Commission denied an application for an affordable housing development and gave as one of its reasons that it wished to have fifty percent (50%) rather than twenty percent (20%) (Section 8-30g(a)(B) of the units devoted to affordable occupancy. The court, (Berger, J.) disapproved of such limitation on the grounds that Section 8-30g does not allow a zoning authority to impose more stringent percentages than those contained in the statute. Likewise herein, there is nothing in Section 8-30g which authorizes a zoning authority to limit the economic composition of an affordable housing development. Subdivision (a)(B) of the statute in part qualifies a housing development as affordable if "no less than twenty percent of the dwelling units are either restricted or assisted." The defendant's understanding of its powers under Section 8-30g would serve to undermine the important objectives which the legislature began to outline over ten years ago. See, West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 511 (1994). Such an implied limitation would be antithetical to the intent of the legislation. Ibid.
In Pratt's Corner Partnership v. Southington P. Z.Commission, 9 Conn. L. Rptr. No. 10, 291-98 (July 26, 1993) this court traced the legislative path which led to Section 8-30g. It is helpful in this case to retrace those steps. "The General Statutes are replete with forceful legislative expressions of the long standing statewide need for affordable housing both as defined in § 8-39a and § 8-30g. In the area of land use, the legislature first broached the concept of affordable housing when in 1984 it obligated every zoning commission, by regulation, to `encourage the development of housing opportunity for all citizens of the CT Page 197 municipality consistent with soil types, terrain and infrastructure capacity.' P.A. 84-263. In 1988, the General Assembly passedP.A. 88-338 "An Act Promoting the Development of Affordable Housing through the Use of Municipal Planning and Zoning Authority" which authorized zoning commissions to enact regulations permitting special exemptions from density limits to developers who agree to construct units of affordable housing. In 1991, the legislature amended sec. 8-2 to broaden the mandate for affordable housing to include the needs of residents of the planning region in which the municipality is located and to promote choice and economic diversity in housing for low and moderate income households.P.A. 91-392. This amendment not only applies to the legislative power of a land use authority but also to the planning power so that the municipal plan of development was thus required to reflect the mandate".
Finally, even if the defendant were authorized either under § 8-2 or § 8-30g to impose this limitation, it has not enacted regulations to implement that power. Hochberg v. ZoningCommission, 24 Conn. App. 524 (1991).
Having determined that the commission has no authority to impose a fifty percent (50%) limitation on the plaintiff's application, the court must next proceed to decide whether the illegal condition can be severed from the remainder of the approval which is either unchallenged by the plaintiff or which itself will withstand judicial scrutiny.[3]
When considering the severability test, the question is whether the good part and the bad part are so mutually connected and dependent as to indicate an intent of the part of the zoning agency that they should stand or fall together. Mazzolla v.Commissioner of Transportation, 175 Conn. 576, 584 (1978). The question of severability is a question of intent of the agency which of course becomes a judicial question for the court to determine. Burton v. Hartford, 144 Conn. 80, 89 (1956). There is authority for the proposition that under certain circumstances the court may modify an approval by striking the illegal condition and leaving the remainder of the approval intact. Beckish v. Planningand Zoning Commission, 162 Conn. 11 (1971). Pecora v. ZoningCommission, 145 Conn. 435 (1958).
A careful examination of the commission's two resolutions of approval as well as the record upon which these approvals were predicated reveals that the commission believed that the fifty CT Page 198 percent (50%) cap would both discharge its statutory obligation to encourage affordable housing as well as further the town's commitment to the Capital Region Fair Housing Compact. Rejecting the plaintiff's request to lift the cap, the commission declared that a development dedicated to one hundred percent (100%) affordable units was unacceptable. In view of the fact that the commission increased the mix of affordable units from 40 to 50 percent, approved 306 units for the site in 1986 and 226 units in 1990 without any restriction on income levels of the proposed occupants it can fairly be concluded that the commission did not consider its approval so mutually connected and dependant upon the condition that they should stand or fall together. Mazzolla v.Commissioner of Transportation, supra.
As stated above, if the decision is otherwise supported by sufficient grounds as found by the commission, a modification of the decision may be decreed with a view toward ending further litigation. Hochberg v. Zoning Commission, supra at 524. Such a power comports with the authority conferred by § 8-30g(c) upon the court to partly revise or partly modify the decision appealed from in a manner consistent with the evidence in the record before it.
 II. THE COMMISSION'S ACTION PURSUANT TO SECTION 8-30g.
While it is unnecessary for the court to reach the issue of the propriety of the commission's actions under §8-30g in view of the court's holding in Part I above, because of the public character of the case and the significance of the issue to both parties, to the surrounding community and to the class of citizens of our state which are designated persons of low and moderate income, the court elects to review the commission's decision on these alternate grounds. See, e.g. West Hartford InterfaithCoalition Inc., supra at 507.
In compliance with the court's request, the parties have filed supplemental memoranda of law addressing the issue of whether the promotion of diversity of economic class in a housing development by a zoning authority constitutes a substantial public interest within the meaning of subdivision (c)(2) of § 8-30g.
There is no question that § 8-2 commands that municipal zoning regulations promote economic diversity in housing and so that goal has long been recognized by the legislature as constituting a CT Page 199 substantial public interest. Moreover, the convergence of race with economic condition has recently been recognized by experts in our state. In Scheff v. O'Neill, 13 Conn. L. Rptr. 18 (May 1, 1995), (appeal pending in the Supreme Court) the plaintiff argued that racial and economic segregation deprived Hartford's school children of their right to equal educational opportunity. In a report entitled "A Report on Racial/Ethnic Equity and Desegregation in Connecticut Public Schools", former Connecticut Commissioner of Education Gerald Tirozzi stated that "low achievement outcomes associated with poverty are intensified by geographic concentration". To the extent that race is related to low economic status, the federal courts have extolled racially balanced municipalities as being "beyond the pale of either judicial or legislative intervention". Spencer v. Kugler, 226 F. Sup. 235, 237
(1971); aff'd. 404 U.S. 1027. In Builders Service Corporation,
supra at 305, our Supreme Court accepted the mandate of § 8-2 as a call upon Connecticut's zoning commissions to enact legislation designed to include all citizens which would of course, ultimately achieve diversity when taken to its total fulfillment.
On the other hand, the salutary goal of a well balanced community does not imply that the community must maintain a certain quantitative proportion among various economic classes. Berenson v.Town of New Castle, 415 N.Y.S.2d 669 (1979). Indeed, the rationale for inclusionary zoning[4] and its resulting diversity of economic class has been well stated by the Massachusetts Supreme Judicial Court in Zoning Board of Appeals of Wellesley v. HousingAppeals Committee, 433 N.E.2d 446 (1982). "In requiring developers to reserve only a portion of their units as affordable, low income families will be allowed to live in decent apartments, without identification and in close proximity to families of different economic and social levels". Describing lack of diversity of economic class negatively, the U.S. 6th Circuit Court of Appeals in U.S. v. City of Parma, 494 F. Sup. 1049 (N.D.Ohio 1980); aff'd 661 F.2d 562 (1981) concluded that lack of diversity of economic class is deleterious when persons of low and moderate income are not dispersed generally throughout the community but rather are concentrated within an identifiable section of the community. Likewise, in Jones v. Tully, 378 F. Sup. 286 (1974); aff'd per curiam, sub.nom. Jones v. Mead, 510 F.2d 96 (2d Cir.) the court spoke of the necessity under the regulations of the U.S. Department of Housing and Urban Development to expand the supply of low and moderate income housing units in a non discriminatory way outside areas of concentration of economically disadvantaged or minority citizens. CT Page 200
Clearly, then, diversity of economic class within a community is a substantial public interest both statutorily and judicially recognized which Newington is entitled to protect. However, the analysis does not end here. Newington has been designated by the Commissioner of Housing as one of several municipalities in the state which do not satisfy the criteria for exemption from the operation of Section 8-30g. And so, the issue which must be addressed is whether a non exempt municipality's legitimate interest in promoting diversity may be utilized so as to restrict rather than expand the introduction of households of low and moderate income? Bearing in mind the socially remedial purpose of § 8-30g, this court believes that it would subvert the purpose of the statute if a non exempt municipality such as Newington were permitted to rely on economic diversity as a bonafide public interest at the same time that it is classified by the Connecticut Department of Housing as a municipality in need of affordable housing. Thus, this court holds that the advancement of economic diversity in a municipality which is not exempt from the application of § 8-30g, when it is used negatively to inhibit housing access to a given economic class, is not a substantial public interest which the municipality may properly consider.
While not essential to this decision the court notes that a thorough search of the record fails to disclose any basis for the claim that economic diversity in the particular neighborhood of this development as distinguished from diversity in the community as a whole will advance the public interest. There is no evidence that this property is located in a neighborhood that is already inhabited by any members of the economic class in question, let alone evidence of disproportionate numbers of these persons. The defendant's argument that the plaintiff intends to apply to the Connecticut Housing Finance Authority for a loan to finance this project pursuant to the authority granted under Section 8-401 and Connecticut Regulations of State Agencies, Sections 8-119jj-16
through 29 and is therefore committed to a low income cap of forty percent is unavailing because there is nothing in the record to support this assertion. As a matter of law, the statute and regulations which the defendant cites constitute but a single source of funds to which the plaintiff is not necessarily bound. In fact, the statutes reveal that there are other possible sources of financial assistance for this project, e.g. Sec. 8-403.
Turning now to the two resolutions of approval, neither identifies a specific public interest which the commission seeks to CT Page 201 protect. Rather, they seem to justify the limitation as a partial fulfillment of the commission's commitment to the Capital Region Fair Housing Compact. A record search indicates that various members of the commission expressed their individual views with respect to the appropriateness of the fifty-fifty mix. On the whole, the consensus seemed to be that the limitation was necessary to protect abutting property values and the character of the neighborhood. This attitude was based on the misconception that low and moderate income housing developments by their very nature and because of the type of people who occupy them, tend to discourage market interest in abutting properties regardless of architectural design, landscape and cosmetic amenities. The record is devoid of probative evidence that one hundred percent affordable occupancy would have a detrimental effect on property values. At the same time, protection of property values has long been an acknowledged purpose of zoning. Karen v. East Haddam, 146 Conn. 720,729 (1959). Thus, in a given case, a zoning authority may have a legitimate public interest in protecting property values. In this case, the commission has failed to state the basis for this belief and the record is consistent with that omission.
"Under 8-30g the significance of protecting property values as a substantial public interest falls to a lower level in the hierarchy of importance. It is the view of this court that the legislature has already determined that an affordable housing development, should not, solely by its nature, be considered harmful to property values". Pratt's Corner Limited Partnership v.Southington Planning and Zoning Commission, 9 Conn. L. Rptr. 101, 129 (1993).
The other basis for the commission's limitation is its perception that there is no need in Newington for the additional 64 affordable units which one hundred percent dedication would afford. The record discloses that the comments of individual members of the commission may have fostered an erroneous understanding by the commission collectively that it had the right to disagree with the Department of Housing's designation of Newington as a non exempt community. See, e.g. the remarks of Commissioner Herbert, Exhibit 8, p. 30. Likewise, Commissioner Khentigan fashioned his own standard of need as "Newington not having a pressing need". Exhibit 10, p. 26. These misunderstandings reflect themselves in the Commission's resolutions of May 25, 1994 in which it stated that there already is "a moderate supply of affordable housing in the area". It is now obvious that Newington's misunderstanding of what qualifies as affordable housing has no relevance to the CT Page 202 standard of need referred to in Section 8-30g. West HartfordInterfaith Coalition, Inc., supra at 518. There is insufficient evidence in the record to support this conclusion.
Finally, the Commission has failed to balance the need for the additional units against its perceived public interest in promoting economic diversity in order to protect property values. WestHartford Interfaith, supra at 515.
For all of the foregoing reasons, the limitation on the percentage of occupancy of this development by persons of low and moderate income is invalid and of no force and effect. The Commission's decision is accordingly revised and modified so as to delete the fifty percent limitation. The balance of the decision remains in full force and effect pending remand for the limited purpose of determining the appropriateness (including the economic viability) of the pool in view of the court's revision in eliminating all market rate units. The court will retain jurisdiction to reconsider this issue after remand. The Commission shall complete its action within ninety days unless extended by the court for good cause shown.
MOTTOLESE, J.