[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 12145
In this administrative appeal, the plaintiff, AvalonBay Communities, Inc. (Avalon), challenges a decision of the defendant, the Town of Orange Planning and Zoning Commission (commission). The commission amended the town's zoning regulations to prohibit Planned Residential Developments (PRD) in areas zoned as Light Industrial (LI) Districts.
Avalon contracted to purchase a 9.58 acre parcel of land owned by Ernest Cuzzecreo and Cuzz-Acres-Orange Limited Partnership. The undeveloped property is located at Edison Road and Prindle Hill Road and in area zoned as a Light Industrial District (LI-2). Avalon submitted an application to the commission for a special permit, site plan approval and other attendant approvals needed for the planned residential development (PRD) on the parcel.
At the time of Avalon's application, the town's zoning regulations allowed, by special permit, PRD's for low and moderate income housing in a LI-2 zone. Avalon submitted its proposal, under the provisions of General Statutes § 8-30g, to the commission as an affordable "housing application; it intends to reserve 25% of the living units for residents who qualify as affordable housing tenants. The commission denied Avalon's original application and also its subsequent, modified proposal. Those denials are the subject of a companion appeal brought under § 8-30g.[1]
On March 17, 1998, the Commission voted to delete those provisions of their zoning regulations that permitted PRDs in the Light Industrial Districts (which included LI-2). The commission also designated "dwelling" as a prohibited use in these zones. The commission duly published notice of these decisions.
Avalon has taken this appeal from those actions, claiming that the commission has violated the provisions of General Statutes §§ 8-2 and 8-30g. Avalon claims that the commission acted illegally because the way in which they amended the town's zoning regulations: "contravenes the affirmative obligations of municipal zoning commissions, pursuant to § 8-2 (a) of the General Statutes, [which is] to promote . . . low and moderate income [housing]. . . . [the commission's action] it is not supported by sufficient evidence in the record,. . . . it is not CT Page 12146 necessary to protect substantial interests in health, safety, or other matters which the Commission may legally consider, and any such public interest do not clearly outweigh the need for affordable housing in orange [the § 8-30g standard],. . . . [and] it will operate to exclude low and moderate income families from Orange in violation of § 8-2 for no valid purpose."
 JURISDICTION Aggrievement
Avalon alleges that, "[n]otwithstanding the fact that Avalon's 1997 applications are exempted from the Commission's March 17, 1998 action by virtue of § 8-2h of the General Statutes, Avalon is aggrieved as a matter of law within the meaning of § 8-30g and §§ 8-8 (a) and (b) of the General Statutes in that Avalon is the contract purchaser of real property in a LI-2 zone, on which parcel it is currently pursuing an affordable housing PRD development, and the Commission's action, if it becomes effective and applicable, will have a substantial adverse impact on the viability of the pending applications, including but not limited to precluding Avalon from amending, modifying, or withdrawing its application and rendering the approval a nonconforming use."
Avalon argues that it is aggrieved because its "development, if and when constructed, will be nonconforming." Hence, the development, according to Avalon, would be subject to Orange regulations dictating that the nonconformities "should be changed to conformity as quickly as the fair interest of the owners permit." Furthermore, Avalon argues, repairs could be made only "when required by law to protect the public health and safety." The regulations, Avalon argues, would further restrict Avalon use of the property because they would not allow enlargement, reconstruction, or structural alterations to the development, and, in addition, Avalon could not reconstruct the building if it were "destroyed by fire or other casualty to an extent of greater than 75% of its assessed valuation." Moreover, Avalon argues that its "status as a contract purchaser, applicant, and proposed developer of an identified parcel specifically impacted by the Commission's decision gives it the necessary [specific, personal and legal] interest" in the decision.
The commission argues that "Avalon has no standing to launch a general challenge to Defendant Commissions's action; any specific impact to Avalon's pending application can be dealt with CT Page 12147 under the pending Affordable Housing case, docketed as CV-98-0492246-S."
"Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." Rodriguez v. MalloryBattery Co., 188 Conn. 145, 149, 448 A.2d 829, 830 (1982). The commission's argument that Avalon lacks standing does not persuade the court; the commission cites no legal authority for the proposition that Avalon must challenge the commission's amendment of the regulations in the same appeal as its challenge to the commission's denial of its special permit and site plan application. Nonetheless, because pleading and proof of aggrievement are jurisdictional matters, this court must determine whether Avalon is aggrieved by the commission's decision. See Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996).
"To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specifically and injuriously affected as to property or other legal rights." Smith v. Planning ZoningBoard, 203 Conn. 317, 321, 524 A.2d 1128 (1987). Because Avalon contracted to purchase property within the zone to which the commission's decision pertains, it is an aggrieved party. SeeCole v. Planning Zoning Commission, 30 Conn. App. 511, 514,620 A.2d 1324 (1993) (finding aggrievement under § 8-8 (a)(1)[2]
where the plaintiff owned property within the zone affected by the decision); Shapero v. Zoning Board of Stamford,192 Conn. 367, 376, 472 A.2d 345 (1984) (holding that a contract purchaser possesses a sufficient interest in the property to be aggrieved). Although "there can be no aggrievement when the zoning regulations of a municipality are amended in such a way that no particular area or property is affected," here, light industrial districts I and II are clearly identified as the areas affected by the amendment. Sheridan v. Planning Board, 159 Conn. 1, 12,266 A.2d 396 (1969).
Accordingly, the court finds that the plaintiff has established aggrievement for the purposes of §§ 8-8 and 8-30g.
 Timeliness and Service of Process
The commission published notice of the decisions that amended CT Page 12148 the town's zoning regulations on March 24, 1998. Avalon commenced this action by service of process on the commission's chair and the town clerk on April 7, 1998, within fifteen days as required by General Statutes §§ 8-8 and 8-30g.
Accordingly, the court has jurisdiction to hear and decide this appeal.
 STANDARD AND SCOPE OF REVIEW
Avalon argues that the court should subject the commission's decision to a heightened or special standard of review based on General Statutes §§ 8-2 and 8-30g.
 Section 8-2
Avalon argues that, in Builders Service Corp., Inc. v.Planning Zoning Commission, 208 Conn. 267, 545 A.2d 530 (1988), the Supreme Court of Connecticut "directed heightened scrutiny of municipal land use agency actions that constitute a form of economic discrimination against low and moderate income households." In that case, the court invalidated a minimum floor space regulation that was not "rationally related to the legitimate objectives of zoning, including the promotion of health, safety, and general welfare or conserving the value of buildings that are outlined in § 8-2." Id., 306.
"[A] zoning commission acts in its legislative capacity when adopting new regulations or rezoning property. Burnham v.Planning Zoning Commission, 189 Conn. 261, 265, 455 A.2d 339
(1983). Thus, "conclusions reached by the Commission must be upheld by the trial court if they are reasonably supported by the record.' Id." TCR New Canaan, Inc. v. Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 384353 (March 30, 1992, Berger, J.) (6 Conn. L. Rptr. 91, 99). The court must "search the record to ascertain if there is a valid reason for the commission's action. Morningside Association v. Planning Zoning Board,162 Conn. 154, 156[, 292 A.2d 893] (1972). A valid reason simply means that the amendment must bear a rational relationship to the legitimate objectives of zoning as set forth in § 8-2. BuildersService Corp. v. Planning Zoning Commission, [supra,208 Conn. 283]." Truskowski v. Darien Planning Zoning Commission, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 116817 (November 20, 1992, Mottolese, J.) (8 C.S.C.R. 34). CT Page 12149
Consequently, the court must determine whether the record reasonably supports the commission's reasons for its decision. See Burnham v. Planning Zoning Commission, supra,189 Conn. 265. If the record supports the commission's reasons for its decision, the court must then determine whether the reasons are valid by virtue of being "rationally related to a legitimate objective of zoning." Builders Service Corp. v. Planning ZoningCommission, supra, 208 Conn. 306.
 Section 8-30g
Section 8-30g (c) provides, in pertinent part, that "[u]pon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1)(A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial interests in health, safety, or other matters which the commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development. . . ." Section 8-30g (b) provides, in pertinent part, that "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such decision pursuant to the procedures in this section." The statute defines an affordable housing application as "any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing." General Statutes § 8-30g (a)(2).
 DISCUSSION
Avalon claims that the commission acted illegally in prohibiting PRDs in LI zones and, further, that the commission bears the burden of proving that it did not act illegally. The commission, in response, argues that it did not act arbitrarily, illegally or in abuse of its discretion. Specifically, the commission contends that the legislature approved its goal of preserving industrial land for industrial uses when it enacted an amendment to § 8-30g in 1995. Public Acts 1995, No. 95-280, § 1. (Commission Brief, pp. 7-9.) The statute, as amended, provides CT Page 12150 that a commission has sustained its burden under § 8-30g if the applicant's proposal seeks to "locate affordable housing in an area which is zoned for industrial uses and which does not permit residential uses[.]" General Statutes § 8-30g (c)(2)(A).
First, the court notes that § 8-30g (c)(2)(A) does not address the legitimacy of amending regulations to bar affordable housing from industrial zones. Section 8-30g (c)(2)(A) concerns the use of existing zoning regulations to justify a commission's decision to deny an affordable housing application if that application would locate affordable housing in an industrial zone. Here, the appeal does not involve an affordable housing application, as defined by the statute. More substantively, however, § 8-30g (c)(2)(A) deals not with the amendment of regulations, but with their application to affordable housing cases.
Avalon challenges the commission's independent initiative to amend its regulations, not the commission's decision on an applicant's affordable housing application as defined in the statute. Because Avalon is not appealing a decision on an "application made . . . by a person who proposes to develop . . . affordable housing," § 8-30g cannot apply. See General Statutes §8-30g (a)(2).
Nevertheless, Avalon contends that § 8-30g applies in this case because "[t]his situation is no different in substance than an application by an affordable housing developer to amend the regulations to permit his development. It simply presents the converse of the same proposition, to wit, a decision on amending zoning regulations having a substantial adverse impact on the development of affordable housing." Avalon argues that the application of the § 8-30g test is appropriate because § 8-30g, as a remedial statute, "must be liberally construed in favor of those whom the legislature intended to benefit." Kaufman v. Zoning Commission, 232 Conn. 122, 140, 653 A.2d 798 (1995).
However liberally construed, § 8-30g simply does not apply to this case.
"[I]f the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction." (Internal quotation marks omitted.) Elliot v. Sears, Roebuck Co., 229 Conn. 500, 508, 642 A.2d 709 (1994). The plain language of § 8-30g provides that its unique standard of review applies CT Page 12151 only to appeals taken from denials and restricted approvals of affordable housing applications. These applications may include, for instance, zone changes preliminary to the actual development application itself. Kaufman v. Zoning Commission, 232 Conn. 122,141 (1995); Dime Savings Bank v. Durham Planning Zoning Com'n, 1995 WL *548755, p. 1, 3, Lenehy, J., 1995).
Therefore, § 8-30g (c)(2)(A) is not applicable to and does not resolve any issues in this appeal and, because this is so, the burden shifting provisions of that statute do not apply to this appeal.
Rather, the court must look to §§ 8-2 (zoning regulations) and 8-23 (zoning plan of conservation and development) to determine whether these statutory provisions constrain Orange from amending its regulations to preclude planned residential development from its light industrial zones.
Avalon argues that § 8-2 mandates that Orange encourage housing opportunity through its regulations. The Commission, in contrast, argues that the relevant portions of §§ 8-2 and 8-23
are advisory, rather than mandatory, and these provisions are not dispositive of this appeal challenging the propriety of the Commission's votes deleting dwellings and PRDs from light industrial districts.
Although the legislature has mandated that municipalities address affordable housing; see, e.g., Griswold Hills NewingtonLimited Partnership v. Newington Town Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 540954 (March 11, 1996, Mottolese, J.) (16 Conn. L. Rptr. 45, 46-47); no Connecticut court has construed the provisions of §§ 8-2 and 8-23 as requiring that any specific measures be enacted by town commissions. This court, therefore, looks to the legislative history of these statutes to determine how the legislature intended that they be construed.
Representative Looney, the sponsor of the bill that became Public Act No. 91-392, stated that "[t]here is no specific requirement that would be met here, but Representative Radcliffe is correct to the extent that if someone — if a town entirely repudiated that consideration and did not make an effort to even begin to encourage or even minimally address those identified concerns, there might then be grounds to raise an objection to the plan or the ordinance." 34 H.R. Proc., Pt. 18, 1991 Sess., p. CT Page 12152 6991. Looney further clarified that "the intent is that the town would undertake a good faith analysis of those needs and would begin to incorporate some effort to address those needs in its plan. It certainly would not require any specific program, but it would require the town to undertake some good faith analysis to meet the housing needs of some greater diversity as required under the amendment. . . . It would require a good faith analysis of ways in which the town might begin to make some initiatives to accommodate diversity of housing without setting a time table, a mandate in terms of quota or numbers or specific income levels, that would have to be met . . . any given time." 34 H.R. Proc., Pt. 18, 1991 Sess., pp. 7027-28.
Senator Jepsen, the sponsor of the bill before the senate, stated that "this bill makes no mandate on towns to in any sense immediately address zoning and planning." 34 S. Proc., Pt. 9, 1991 Sess., p. 3205. Jepsen added that "certainly with time, I support within time, if a community utterly failed, completely failed to address affordable housing as a target or a goal there would be an opportunity to take action, but this [has] not been a problem." 34 S. Proc., Pt. 9, 1991 Sess., p. 3215.
Based on the legislative history of Public Act 91-392, this court finds that the provisions of the act as applied to this appeal are not mandatory. There is nothing in the record to support the conclusion that by these amendments to the zoning regulations the commission has effectively defeated the purpose of Public Act 91-392. It has, instead, merely designated certain industrial areas unavailable for affordable housing. (In fact, such a ban is contemplated elsewhere by the legislature, under the language of General Statutes § 8-30g.[3]) The act requires only that the town planning and zoning commissions make an effort, in good faith, to address affordable housing concerns. Orange has, based on the record of this case, met this goal allowing planned residential developments in designated areas, however limited. Further, affordable housing can take other forms than just planned residential developments.
Given this, the court's task is to review the commission's legislative decision to determine if there exists a reasonable, i.e., rational, basis for its actions. The court uses a two-step test: the amendments must be in accordance with the town's comprehensive zoning plan and they must be reasonably related to the "normal police power purposes in section 8-2 of the General Statutes." Fuller, Land Use and Practice, § 33.1, p. 564. In reviewing the commission's decision to amend the town's zoning CT Page 12153 regulations, the court will rely on the commissions reasons as stated in the minutes to its March 17, 1998 meeting: "Numerous reasons were cited to approve the proposed amendments. They included but were not limited to the following:
"1. The need to preserve industrially zoned land. Said land is a limited resource. It is vital to the economic growth of the community. The tax base must be expanded without a dramatic increase in the need for municipal services.
"2. By eliminating the P.R.D. from the Light Industrial Districts, a clear message to "protect the integrity of the industrial districts' will be sent to existing and potential industrial users.
"3. Residential and industrial uses are incompatible. During the past year the T.P.Z.C. has seen numerous instances via the application review processes, and complaints from existing development, relative to the conflict of residential and industrial uses.
"4. The Commission also found the proposed amendments to be consistent with the Comprehensive Town Plan of Development."
The record reveals commentary favorable to the proposed amendment. The Valley Regional Planning Agency, pursuant to §8-3b, voted to endorse the commission's proposed changes, stating that the amendment, "protects the industrial districts for industry as the Commission intended but, on the other hand, requires more affordable units in other districts where the PRD is allowed. This is a good trade-off to protect the Comprehensive Plan when that plan locates areas for specific uses such as industrial or affordable." First Selectman Robert Sousa also spoke in favor of the amendment: "But I [am] hopeful tonight that we can all agree that the use of this precious land for developments that are a drain on the town services is just unquestionably not in the long term best interest of the town. Whether it is an industrial use or whether it is a retail use those types of uses bring in revenue. . . ." Sousa further stated that industries "have indicated in previous meetings their concerns about putting industry and housing together. . . . It is just everywhere it has been tried, housing [sic-add and] industry right next-door has failed."
Bill Fuhlbruck of the town's economic development commission, stated that "there [was] no doubt in [his] mind that co-mingling CT Page 12154 land use, residential with industrial, is bad for both the housing residential and bad for the industrial or business usage. They don't belong together." Fuhlbruck added that "[t]here are other locations in the Town of Orange that might be appropriate for residential uses. . . ." According to Fuhlbruck, "[b]usinesses or developers are going to be going to Shelton or West Haven or Milford. We want them [in Orange] so they can improve [Orange's] tax base. . . . Residential usage does not do that. It doesn't improve the tax base. It makes a hazard to the tax base with additional anticipated cost for public services, police, fire, education."
The testimony at the public hearing provides an adequate basis to support the commission s first three stated reasons for its decision. Speakers addressed the economic need to preserve the land for industrial use (reason one), the need to attract industry through town planning and regulation (reason two), and the need to reduce conflicts between residential and industrial uses (reason three).
The Town Plan of Development (development plan) was submitted as a part of the Supplemental Return of Record and therefore is available for review so that the court may determine whether the amendments to the town's zoning regulations are consistent with the town's plan for development.
The development plan, however, has several conflicting provisions. In 1992 the town amended the development plan to provide for a PRD program in residential, industrial and commercial zones. Development programs such as these are designed to augment the town's Comprehensive Plan of Development (comprehensive plan). "These programs reflect and detail townwide policies and goals and recommend particular patterns of development. Generally, development programs are planning steps that precede design and implementation. Programs, when prepared, may be a testing of townwide guidelines and may be cause for adjustment of other parts of the Plan." Therefore, to the extent that the amendments, the subject of this appeal, delete PRDs in light industrial zones, the amended zoning regulations conflict with the town's development plan PRD program.
At the same time, however, the development plan encourages use of these districts for light industrial use, which is defined as clean manufacturing and assembly, business office projects and distribution facilities. While the proposed amendments to the zoning regulations eliminate PRDs in light industrial areas the CT Page 12155 amended zoning regulations do not prohibit PRDs in the whole town. Therefore, these proposed amendments are not inconsistent with the development plan, although they do restrict the PRD Program augmenting the development plan. The two goals of economic development in light industrial zones and PRDs in the town are met by the amendments: there is an intersection of meeting of goals but not union, in mathematics parlance. It cannot be said, however, that the proposed amendments are wholly inconsistent with the development plan. It can be said that there is sufficient basis in the record, for the commission to have concluded that the proposed amendments are consistent with the town's development plan (just not wholly consistent with it.)
This court must next address whether the commission's reasons for its decision are rationally related to a legitimate objective of zoning. General Statutes § 8-2, which governs the development of municipal zoning regulations, provides, in pertinent part, that zoning regulations "shall. encourage the development of housing opportunities, including opportunities for multifamily dwellings, consistent with soil types, terrain and infrastructure capacity, for all residents of the municipality and the planning region in which the municipality is located. . . . Such regulations shall also promote housing choice and economic diversity in housing, including housing for both low and moderate income households, and shall encourage the development of housing which will meet the housing needs identified in the housing plan. . . ." The same public act that created this language also added the following to § 8-23, which guides towns in preparing a plan of conservation and development: "Such plan shall make provision for the development of housing opportunities, including opportunities for multifamily dwellings, consistent with soil types, terrain and infrastructure capacity, for all residents of the municipality and the planning region in which the municipality is located . . . Such plan shall also promote housing choice and economic diversity in housing, including housing for both low and moderate income households, and encourage the development of housing which will meet the housing needs identified in the housing plan. . . ."
Avalon argues that the commission acted illegally because its decision "effectively precludes all opportunities for multifamily affordable housing in Orange in violation of § 8-2 of the General Statutes." The record discloses that PRDs remain a permitted use, by special permit, in two locations in the area zoned as the residential district: "Peck Lane south of the Boston Post Road" and "Old Lambert Road south of the Boston Post Road." The town's CT Page 12156 zoning regulations go on to disclose that the major criteria for the location of a PRD is the presence of a public water supply and public sewers. Avalon has failed to prove that by restricting PRDs to these two areas effectively precludes all opportunities for multifamily housing in the Town of Orange.
Furthermore, §§ 8-2 and 8-23 themselves designate multiple interests that each town commission must consider when it adopts its regulations and its plan of conservation and development, including the location of land for industrial use. See General Statutes §§ 8-2 (a), 8-23 (a). Section 8-2 states that the regulations "shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." As a result, the commissions decision to preserve the LI-1 and LI-2 zones, in an attempt to spur economic growth, draw industry to Orange, and reduce conflicts between incompatible uses, advances legitimate goals of zoning consistent with the enabling statutes.
 CONCLUSION
The court finds that reasons given by the commission for enacting the contested amendments are valid and reasonably supported by the record. Further, there exists a rational relationship between the amendments and the town's legitimate zoning goals. Accordingly, the plaintiffs appeal is dismissed.
It is so ordered.
MUNRO, J.